In the Matter of the Application of ELIZABETH HINES, Appellant, for an Order Directing that the Arbitration Provided for in a Certain Contract in Writing, Dated October 30, 1926, between the Petitioner and FLORENZ ZIEGFELD, Respondent, Proceed Pursuant to the Provisions of the Said Agreement and of the Arbitration Law.

First Department, February 3, 1928.

Arbitration — contract for arbitration — contract between actress and producer provided that all terms of " Producing Managers-Actors Equity form of Run of the Play contract " were incorporated — said contract provided for arbitration and actress had right thereto — right to arbitrate not lost by failure of one party to acknowledge agreement — action of parties in actually selecting three arbitrators waived provision in contract for naming of one arbitrator — on failure of one arbitrator selected by one party to act other party had right to ask court to fill vacancy — court had no right to pass on merits.

The appellant, an actress, entered into a contract with the respondent, a producer, for her services in connection with a proposed play. The contract provided that the play would commence a run on a certain date and if not that the appellant would be given a place in another play and that appellant could not work for another producer without, the consent of the respondent. The 'play was not put on and the respondent did not give the appellant another play and refused her permission to act in another play. The contract further provided that all the terms and conditions of the " Producing Managers-Actors Equity form of Run of the Play contract " except as modified by the contract executed should be a part of the contract. The contract referred to provided for arbitration and that one arbitrator should be chosen by the manager, one by the Actors' Equity Association and the third named in the contract.

Under the terms of the contract executed by the parties the appellant had the right to have arbitrated the questions at issue between herself and the respondent.

The fact that the agreement to submit the controversy to named arbitrators was not acknowledged by the respondent is not important since this is not a statutory arbitration.

The parties each selected an arbitrator and the two selected a third. The arbitrator selected by the respondent refused to act and the appellant seeks to have the vacancy filled by the court. The respondent cannot resist such application on the ground that the third arbitrator was not named in the contract and that, therefore, the arbitration must fall or an opportunity be given to select a third arbitrator, for the parties have waived strict compliance with the contract by actually selecting three arbitrators and agreeing to submit the dispute to them.

Upon one of the arbitrators refusing to act the appellant had the right to ask the court to fill the vacancy and the court on such application had no right to adjudicate on the merits.

DOWLING, P. J., dissents, with memorandum.

APPEAL by the petitioner from an order of the Supreme Court, entered in the office of the clerk of the county of New York on the 9th day of July, 1927, as resettled by an order entered in said clerk's office on the 13th day of October, 1927.

*Herbert Plaut* of counsel [*Rabenold & Scribner*, attorneys], for the appellant.

*Samuel Seabury.* of counsel, for the respondent.

MARTIN, J. Miss Elizabeth Hines, a musical comedy star, entered into an agreement with Mr. Florenz Ziegfeld, a manager, whereby she was engaged to appear in the principal woman's part in a play called "The Show Boat," a musical adaptation of Miss Edna Ferber's popular novel of the same name.

By the terms of the agreement dated October 30, 1926, Miss Hines was engaged for the entire run of the play in the United States and Canada, commencing on or about January 10, 1927, and not later than January 24, 1927, but her services in that play for such run were not to continue in any event beyond one year and a half from said date of the commencement thereof. If for causes beyond the manager's control, "The Show Boat" was not ready for public performance at a stated time in January, 1927, it was agreed that Mr. Ziegfeld would assign Miss Hines to another musical play. In that event all of the provisions of her contract were to be carried over to the other play in lieu of and in place of "The Show Boat."

Miss Hines covenanted that she would render her services exclusively to Mr. Ziegfeld. She further agreed that he should have the right to secure an injunction to restrain any appearance or performance for other persons. As compensation for her exclusive services she was to receive the sum of $1,500 each week during the first year of such run; the sum of $1,750 per week during each week of the first four months of the second year of such run, and the sum of $2,000 during each week for the balance of such run. The agreement provided that all the terms and conditions of the Producing Managers-Actors Equity form of Run of the Play contract, which were not inconsistent with the terms of the special agreement of October 30, 1916, were incorporated into and deemed a part of this special contract.

Mr. Ziegfeld did not produce "The Show Boat" on the date named and agreed upon in the October thirtieth agreement. After

the expiration of the specified dates in January, 1927, he notified Miss Hines that he had decided to postpone the opening until the fall of 1927.   It is not claimed that the postponement of the opening was for a cause beyond defendant's control.   Mr. Ziegfeld did not assign or offer to assign Miss Hines to a part in any other musical play, as provided in his agreement.   It is asserted that the petitioner feeling herself bound by her covenant to refrain from rendering her services to any party other than Mr. Ziegfeld without first having obtained his written consent, on being notified of the postponement of the opening of " The Show Boat " for such an unreasonable time, requested Mr. Ziegfeld to give his consent to her taking other employment during the period of the postponement; and that this Mr. Ziegfeld refused.

It is the contention of Miss Hines that as a result of the postponement of the opening until the fall and the failure on the part of Mr. Ziegfeld to assign her to another play or to give his consent to her employment elsewhere, she lost a large amount of money; that the business of the theatre is a seasonal one; that engagements of a substantial character most profitable to a leading actress are begun in the fall; that her prestige in the theatre at the time of the making of the agreement was such that she was not dependent upon Mr. Ziegfeld for an engagement; that there were other managers then desirous of engaging her; that when Mr. Ziegfeld refused to carry out his contract it was too late to avail herself of other opportunities and, besides, Mr. Ziegfeld would not give his consent to her doing so; that consequently when Mr. Ziegfeld left her without employment for the season, he caused her to lose an entire year in her career, money earnings, the prestige through successful performance in a leading part of a Ziegfeld production as well as the publicity naturally attendant upon such performance.

Miss Hines demanded that the matter of damages caused by Mr. Ziegfeld's breach be arbitrated and that he pay her the amount fixed by the arbitrators.

In answer to that demand it was urged by the respondent that the clause in the Producing Managers-Actors Equity form of Run of the Play contract with reference to arbitration was not made a part of the contract between the parties.

We find, however, that paragraph " 7 " of the October thirtieth agreement incorporated the terms and conditions of the Producing Managers-Actors Equity form of Run of the Play contract as follows: "All the terms and conditions of the Producing Managers-Actors Equity form of Run of the Play contract, except as by this contract modified, shall be deemed to be a part of this contract.

35

Wherever such Producing Managers-Actors Equity form of Run of the Play contract shall be inconsistent with or contradictory to any of the terms or conditions herein contained, then the terms or conditions herein contained shall prevail."

In said " equity " form of contract the following arbitration clause will be found: " 12. In event that any dispute shall arise between the parties as to any matter or thing covered by this agreement, or as to the meaning of any part thereof, then said dispute or claim shall be arbitrated. The Manager shall choose one arbitrator and the Actors' Equity Association the second; ........ shall be the third. These three shall constitute the Board and the decision of a majority of the arbitrators shall be the decision of all and shall be binding upon both parties and shall be final. * * *."

The respondent contends that there are a number of decisions which hold that under such circumstances the arbitration clause is not a part of the contract. The cases cited have no application. They construed contract provisions that stated certain sales were to be governed by the raw silk rules adopted by the Silk Association of America. The contracts referred to provided how sales should be made, but did not provide that the clause with reference to arbitration should be considered embraced within the contracts.

Here it is expressly provided that certain provisions for arbitration shall be made a part of the contract between the parties. The arbitration clause, therefore, is applicable and it follows that all questions for decision must be decided by arbitration.

When this motion was heard at Spec'al Term the court undertook to decide all the matters in dispute and held that the appellant was entitled to but two weeks' salary at $1,500 per week. The arbitration clause provides that if any dispute shall arise as to the meaning of any part of the contract it shall be arbitrated.

The Court of Appeals in *Matter of Wenger & Co.* v. *Propper S. H. Mills* (239 N. Y. 199) said: " The parties have agreed that their disputes arising relative to the fulfillment of the terms of the contract shall be settled by arbitration. It is the duty of the court to enforce their agreement rather than to undertake itself to settle the dispute or to narrow the field of arbitral disputes."

In *Smith, Coney & Barrett* v. *Becker, Gray & Co.* (L. R. [1916] 2 Ch. 86, 94) Lord Cozens-Hardy, M. R., said: " When once we have got to the point that there is a contract, and a contract which confers rights upon both parties, it seems to me that the case is really at an end. The parties have in terms agreed that their mutual rights and obligations shall be settled by arbitration, and in no other way. It may or may not be a very foolish thing to

have such a term. It is not for me to say what my own view may be in the matter, but as a matter of business I suppose these gentlemen engaged in trade prefer such a tribunal to the courts.   *   *   * In my opinion there is nothing in the present case which justifies a contention that this is not a fit question to be decided by the arbitrators."

In *Matter of Wenger & Co.* v. *Propper S. H. Mills (supra)* it was the contention of the appellant that there was nothing to arbitrate; that a point of law only was involved which prevented one of the parties from recovering anything under the contract. The Court of Appeals held that the court had no right to decide that question; that all the questions in dispute growing out of the contract should be submitted to arbitration.

It is also urged by the respondent that under the statute the right to an arbitration was lost for the reason that the agreement to arbitrate was not properly executed. This refers to lack of acknowledgment on Mr. Ziegfeld's part. But we are not concerned with that question. This is not a statutory arbitration. It is also contended that, because of the failure of the parties to insert the name of the third arbitrator, the arbitration must either fall or there must be an opportunity given to select the third arbitrator.

Mr. Ziegfeld says that he was willing that an arbitration in the manner provided for by the contract proceed strictly in accordance with the provisions of the Run of the Play contract incorporated in the October thirtieth agreement.

To accomplish that result, he chose Mr. Gene Buck as his arbitrator. The attorney representing him on April 19, 1927, wrote as follows:

" Since you insist on going through with an arbitration in this matter, Mr. Ziegfeld desires you to be informed that he has selected Mr. Gene Buck to represent him, as one of the arbitrators.   *   *   *

" Since there is going to be an arbitrator in this matter, at Miss Hines' insistence, it is going to be an arbitration exactly as provided by the Actors' Equity contract."

In a very important part of the letter will be found a practical construction of paragraph " twelfth " which consents to the appointment of the third arbitrator: " Mr. Buck will be pleased to meet the arbitrator selected by Miss Hines or by your Association *and will agree upon a third arbitrator.*"

The letter then proceeds to state: " I shall be pleased to receive notification from you, stating whom you have chosen as the second arbitrator and will forward the name to Mr. Buck."

The Actors' Equity Association chose Hon. Robert L. Luce as the second arbitrator. Thereafter, Mr. Ziegfeld appointed Mr.

William Morris in place of Mr. Buck with the consent of Miss Hines and the Actors' Equity Association for the reason that. Mr. Buck was unable to act. Pursuant to the suggestion in the letter of April 19, 1927, made by Mr. Ziegfeld's attorney, a meeting was arranged between Hon. Robert L. Luce and Mr. William Morris, and they agreed upon Hon. Charles L. Guy as a third arbitrator.

Mr. Ziegfeld and Miss Hines ratified the selection of the third arbitrator by an agreement in writing which is called the "submission agreement" and which reads as follows:

"We, the undersigned, hereby agree to submit to arbitration the following controversy:

"Any and all claims by Elizabeth Hines against Florenz Ziegfeld arising out of or connected with the certain agreement in writing between them dated October 30th, 1926.

"We do hereby agree to submit such controversy for decision to Charles L. Guy, Robert L. Luce and William Morris. We further agree that the arbitration shall be conducted pursuant to the New York Arbitration Law.

"It is further agreed that we, individually and jointly, will abide by and perform any award rendered by the arbitrators; and that a judgment of the Supreme Court of the State of New York may be entered upon such award."

Miss Hines signed and acknowledged said submission agreement. Mr. Ziegfeld signed, but failed to acknowledge it.

This agreement is not relied upon by the petitioner as a submission under the Arbitration Law, but as evidence that the parties were in accord on the naming of three arbitrators and that Mr. Ziegfeld waived any right to object to the appointment, after having agreed through his attorney that the two arbitrators should appoint the third and having also personally agreed upon the third arbitrator, and having ratified the appointment in writing.

The three arbitrators fixed a time and place for a hearing of the matters to be submitted to them. Miss Hines appeared at that time and place. So did Hon. Charles L. Guy and Hon. Robert L. Luce. Mr. William Morris did not appear. The arbitrators who were there took the required oath and thereafter declared an adjournment until June 1, 1927, at two P. M. at the same place.

Having learned that Mr. Morris was not to continue as an arbitrator, the petitioner was compelled to resort to the method provided for by statute in order to fill the vacancy caused by such failure or refusal to act.

The course to be followed was indicated in *Matter of Bullard* v. *Grace Co.* (240 N. Y. 388): "When an arbitrator withdraws before the allegations and proofs of the parties have been heard,

the filling of the vacancy by appointment of a substitute arbitrator either under the terms of the contract or under Arbitration Law (§§ 3, 4) becomes a prerequisite to further proceedings under the submission. * * * The purpose of the statute was to change the common-law rule which permitted two arbitrators to hear when the third was notified and refused to attend or was willfully absent * * * and its plain mandate may not be ignored, whether an arbitrator at this stage of the proceedings withdraws for good cause or arbitrarily."

The court is not to deal with the construction of the terms of the contract or the liability of Mr. Ziegfeld in view of the law with reference to arbitration.

Although it is contended by Mr. Ziegfeld that he is liable but for two weeks' salary, Miss Hines asserts that she was prevented from taking any other employment by reason of the fact that she had been directed not to do so by Mr. Ziegfeld and that she was entitled in any event to recover the amount of money lost by reason of the failure of Mr. Ziegfeld to comply with the terms of the contract.

These are all matters for the arbitrators and not for the court. Only where it is clear that there is nothing to arbitrate may there be a refusal on the part of the court to further the arbitration.

In *Matter of Wenger & Co.* v. *Propper S. H. Mills* (*supra*) it is said: " Unquestionably a claim may be so unconscionable or a defense so frivolous as to justify the court in refusing to order the parties to proceed to arbitration, but where a *bona fide* dispute in fact arises over the performance of a contract of purchase and sale it does not devolve upon the court to say as matter of law there is nothing to arbitrate."

We are of the opinion that, if Mr. Ziegfeld had a right to insist upon the arbitrators being chosen in a different manner, he has waived it by entering into the agreement selecting the arbitrators and proceeding as indicated above.

In the situation which developed the proper course to pursue was that followed by the appellant in applying to the court for the appointment of an arbitrator in the place of the one who has refused to act.

The order should, therefore, be reversed, with costs, and the application granted.

FINCH, McAVOY and O'MALLEY, JJ., concur; DOWLING, P. J., dissents.

DOWLING, P. J. (dissenting). I dissent upon the ground that, as a matter of law, under petitioner's contract with defendant and the

Producing Managers-Actors Equity form of Run of the Play contract, by reference made a part of the said contract, petitioner could in no event recover more than two weeks' salary, which has been tendered her and is conceded due her, and, therefore, there is nothing left to be submitted to arbitration.

Order reversed, with costs, and motion granted. Settle order on notice.