**WESTERN VEGETABLE OILS CO., Inc., v. SOUTHERN COTTON OIL CO. et al.**

No. 10455.

Circuit Court of Appeals, Ninth Circuit.

March 1, 1944.

Manson, Allan & Miller, of San Francisco, Cal., for appellant.

S. Hasket Derby, Joseph C. Sharp, James A. Quinby, Lloyd M. Tweedt, and Derby, Sharp, Quinby & Tweedt, all of San Fran-

cisco, Cal. (John J. Whelan, of San Francisco, Cal., of counsel), for appellee Southern Cotton Oil Co.

Before WILBUR, GARRECHT, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

Southern Cotton Oil Company contracted with Western Vegetable Oils Company for the purchase of a tank car of coconut oil. Western, in July 1941, loaded the oil into one of its tank cars and delivered the car to Southern Pacific Company at Oakland for transportation to Gretna, Louisiana. The oil (which had been paid for by the purchaser) was lost in transit.

For convenience Southern Cotton Oil Company will hereafter be called the buyer, Western Vegetable Oils Company the seller, and Southern Pacific Company the carrier.

The buyer presented its claim both to the seller and the carrier, each of which appears to have blamed the other for the nondelivery of the oil. In November 1942 the buyer brought suit against the seller and the carrier, there meanwhile having been some correspondence in the course of which the president of the seller suggested that "arbitration might be the sensible thing." In its answer in the suit the seller asked for a stay of proceedings until arbitration could be had, and later filed a motion to the same effect. This motion the trial court denied, and the seller appeals.

The contract of sale contained a "clause paramount" to the effect that "this contract is subject to the published Rules and Regulations of the National Institute of Oilseed Products—and which are hereby made a part of this contract, except insofar as such Rules and Regulations are modified or abrogated by this contract." Rule 64 (one of a total of 152 Institute rules) is as follows: "Any dispute arising under contracts which cannot be settled amicably between interested parties shall immediately be submitted to arbitration before a committee selected by the San Francisco Chamber of Commerce under the Rules of the National Institute of Oilseed Products."

The contract provided that it should be "deemed to be made and performed in California and is to be governed by the laws thereof." California has a statute providing that "a provision in a written contract to settle by arbitration a controversy there-

after arising out of the contract or the refusal to perform the whole or any part thereof * * * shall be valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract * * *."[1] A similar provision is found in the United States Arbitration Act.[2] The seller says that both statutes are applicable, or in the alternative that one or the other is.

The buyer in this instance was not a member of the National Institute. The contract of sale (drawn on the seller's printed form) makes no mention of the subject of arbitration, merely incorporating by broad reference the Institute rules. Whether such a reference, without more, sufficiently evidences an agreement to arbitrate future differences is a question upon which there is not a great deal of authority. No helpful California decisions on the subject are cited. The case most nearly in point is In re General Silk Importing Co., 198 App.Div. 16, 189 N.Y.S. 391, 392, where the court denied a petition for arbitration on the ground that the contract did not show with sufficient definiteness that the minds of the parties had met on the point of arbitration in the event of controversy. The contract stated that "sales are governed by raw silk rules adopted by the Silk Association of America." These rules in turn provided that all differences arising between the buyer and the seller must be submitted to arbitration. The court thought that an express provision for arbitration might readily have been added or the point otherwise rendered clear by some appropriate phraseology. Since it did not appear that the party opposing arbitration was a member of the association and it fairly appeared that the petitioner was, it was thought that the contract should not be construed as an agreement to relinquish all right to appeal to the courts.

The seller cites Hines v. Ziegfeld, 222 App.Div. 543, 226 N.Y.S. 562, and Marine Transit Co. v. Dreyfus, 284 U.S. 263, 52 S. Ct. 166, 86 L.Ed. 282, as supporting its position. In the New York case a contract of employment between a musical comedy star and a theatrical manager provided that "all the terms and conditions of the Producing Managers' Actors' Equity form of Run of the Play Contract," [222 App.Div. 543, 226 N.Y.S. 566] not inconsistent with the terms of the special agreement between the

---

1 Section 1280, Code of Civil Procedure.    2 9 U.S.C.A. § 2.

actress and the manager, were to be deemed a part of their contract. The Equity form contained a compulsory arbitration clause, and it was held that the clause governed.

In Marine Transit Co. v. Dreyfus, supra, the contract provided that it should be "subject to New York Produce Exchange Canal Grain Charter Party No. 1 as amended." [284 U.S. 263, 52 S.Ct. 167, 86 L.Ed. 282.] The Charter Party referred to contained a provision for arbitration before a committee of the New York Produce Exchange. It was not questioned that the agreement to arbitrate was sufficiently expressed, the dispute being merely as to the validity of the provision making the award of the arbitrators final and binding. The precise point we are concerned with here was thus not presented. The case, like Hines v. Ziegfeld, supra, is distinguishable on the further ground that a specific form of contract—not a host of largely irrelevant rules—was incorporated by reference. The difference is one of degree, but the point we are now considering is the clarity of the thing; and it can hardly be doubted that the references in the Hines and Marine Transit Co. contracts were more specific, hence less liable to misunderstanding than is the reference in the contract before us.

But we do not rest affirmance upon the ground that the intention to arbitrate possible disputes was not plainly expressed, for the record contains internal evidence tending to negative such an intention. One of the Institute rules provides for uniform contracts, and the forms thereof are set out at the end of the rules. Each form contains a "clause paramount" incorporating by reference the rules of the Institute substantially in the same verbiage as that employed in the sales contract here, except that the clause in the uniform contracts adds this language: "and any dispute arising under this contract shall be settled by a Board of Arbitration selected by the San Francisco Chamber of Commerce and to be judged according to the rules of the National Institute of Oilseed Products, and the findings of said Board shall be final and binding upon all the signatories hereto."

Except for the omission of this language, the sales contract throughout follows closely the uniform general contract embodied in the rules—so closely, in fact, as to produce the conviction that the draftsman had the Institute form before him. This apparently deliberate omission of the express provision for arbitration, which the framers of the rules were careful to incorporate into the cognate clause of their uniform contracts, is persuasive evidence of an intention to abrogate the arbitration rule. No world-shaking disturbance of the arbitration principle will flow from an insistence upon the proposition that the intention to submit to arbitration must be more unambiguously evidenced than it was here before a party will be held to have relinquished his traditional legal remedy.

The trial court was of opinion that, in any event, the seller had waived its right by failing to request arbitration "immediately," as required by the Institute rules, no real step in this direction being taken until after suit—well over a year after the buyer had formally made its claim. In view of the conclusion reached, we need not stop to consider the point.

Affirmed.

WILBUR, Circuit Judge (dissenting).

I dissent. As stated in the main opinion the contract between the Western Vegetable Oils Company and the Southern Cotton Oil Company made the rules of the National Institute of Oilseed Products a part of the contract of sale. The rules provided for an arbitration of disputes arising under the contract. The contract of sale required the seller to furnish a railroad tank car for the transportation of the oil. The damages claimed are for furnishing a defective car. This claim clearly arises out of the contract and, consequently, is subject to the agreement to arbitrate. I cannot see that the incorporation of the rules of the Institute concerning arbitration is modified or affected by the fact that the parties did not use a form of contract containing a similar clause, as stated in the main opinion. If this were an action to reform the contract by excluding the arbitration provision such evidence would be significant, but not in this case which is based upon the contract as written.

The arbitration clause of the contract is enforcible under the laws of California which are referred to and made a part of the contract and also by the federal statute covering arbitration. Both statutes provide for a stay of proceedings in an action brought upon an obligation which is subject to arbitration.

The defendant invoked this rule by a motion to stay proceedings against it pending arbitration. It did not request that the suit as against its codefendant be stayed. The fact that the action as against the Southern Pacific Company is not stayed and might proceed pending arbitration is, I think, without significance.

It is also urged that the defendant, the appellant herein, waived the provisions of the arbitration agreement by failing to proceed "immediately" as required by the rules. The arbitration clause is by its terms only applicable to disputes "which cannot be settled amicably between the interested parties". The word "immediately" refers not to the date of the obligation but to the date when it is ascertained that the "dispute" cannot be settled amicably. Until it was determined that the controversy could not be settled amicably the obligation to go forward with the arbitration did not arise. The failure of the seller to proceed is not a waiver of its right to stay an action brought by the other party. Kulukundis Shipping Co. v. Amtorg Trading Corp., 2 Cir., 126 F.2d 978.

The order denying a stay as to appellant pending arbitration should be reversed.