In the Matter of the Arbitration between LEVEL EXPORT CORPORATION, Respondent, and WOLZ, AIKEN & Co., Appellant.

First Department, May 21, 1952.

*David L. Shandalow* of counsel (*Sanders & Shandalow,* attorneys), for appellant.

*Charles H. Levitt* of counsel (*Goldsmith, Jackson & Levitt,* attorneys), for respondent.

SHIENTAG, J.   This is an appeal from an order at Special Term granting the motion of petitioner Level Export Corporation (hereinafter Level) to stay arbitration proceedings instituted by Wolz, Aiken & Co. (hereinafter Wolz) before the General Arbitration Council of the textile industry.   The parties entered into two written contracts whereby Level undertook to purchase from Wolz specified quantities of cloth.   Both contracts contained the following provision: " This Salesnote is subject to the provisions of Standard Cotton Textile Salesnote which, by this reference, is incorporated as a part of this agreement and together herewith constitutes the entire contract between buyer and seller."   The sales note referred to contained a provision for arbitration of all disputes arising thereunder before the General Arbitration Council of the Textile Industry. A dispute arose between the parties and Wolz initiated arbitration proceedings.

Level asserts that it had no knowledge that the Standard Cotton Textile Salesnote embodied a provision for arbitration, that the question of arbitration had not been discussed between the parties, and that it had no intention whatsoever of agreeing to arbitrate disputes with Wolz.   It appears from the record that the Wolz Company is in the textile business but that the Level Corporation is in the business of purchasing and export-

ing a wide variety of commodities. There is no showing of any prior business dealings on the part of the Level company which would create an inference of knowledge concerning the arbitration provision, nor is there any showing that Level at any time had possession of the sales note in which such provision appears. The question thus presented is whether or not an arbitration provision in a document incorporated by reference shall be binding on a party that had no knowledge of said provision, that had not discussed the question of arbitration with the other contracting party, and that was not in the industry for whom the rules in question had been formulated.

This very question was squarely presented to this court in *Matter of General Silk Importing Co.* (198 App. Div. 16) and while the decision in that case was rendered at an early point in the history of statutory arbitration, there is no reason to believe that its authority has in any way been superseded or attenuated. The contract in that case contained the provision that " Sales are governed by raw silk rules adopted by the Silk Association of America." (P. 17.) These latter rules included an arbitration clause. As formulated by the court, the question presented was " whether this contract shows with sufficient definiteness that the minds of the parties met on this point and that they intended to adopt the rules of the Silk Association of America, not merely to insure performance of a contract in accordance with those rules, but that in the event of a controversy it should be arbitrated in accordance therewith." (P. 20.) It appeared in that case that the party seeking to enforce arbitration was a member of the association whose rules were being invoked, and that the party resisting arbitration was not. The court held that the arbitration provision was not binding. That decision was thereafter followed in *Matter of Bachmann, Emmerich & Co.* (204 App. Div. 282). The *ratio decidendi* of those cases applies to the instant case. Here the significant fact is that Level is not in the industry involved and there is no showing that it can fairly be charged with knowledge that the rules adopted for use in that industry contain an arbitration clause.

The authority of the cases cited above was in no sense diminished by the subsequent cases of *Matter of Hines (Ziegfeld)* (222 App. Div. 543) and *Matter of Hatzel & Buehler, Inc.* (303 N. Y. 836, affg. 278 App. Div. 647). In *Matter of Hines (supra)* a producer and actress entered into an employment contract which incorporated by reference the rules of the Equity form contract. While the producer sought to resist arbitration under the Equity rules, no contention was made that he was unaware of the pro-

vision for arbitration and indeed his conduct in that case would have stamped any such contention as patently sham. Similarly, in the *Hatzel* case (*supra*) there was no question but that the party seeking to resist arbitration was aware that the instrument incorporated by reference embodied such a provision.

It may well be that, under the circumstances indicated herein, a party may be deemed bound by provisions of lesser moment than one abridging the fundamental right to a judicial determination. (See *Jones* v. *Cunard Steamship Co.,* 238 App. Div. 172, and *Kachurin* v. *Barr,* 272 App. Div. 391.) Similarly, it may well be that even as to an agreement of arbitration a party would be bound whose background in the industry involved, or whose prior course of dealing, strongly suggests knowledge of the arbitration clause in the incorporated rules. (See *Matter of Hines, supra.*) But under the circumstances here present we do not believe that the petitioner can fairly be said to have agreed to arbitrate controversies arising under the contract. As the matter was put in *Matter of Arthur Philip Export Corp.* (*Leathertone, Inc.*) (275 App. Div. 102, 104, per COHN, J.) : " If a party wishes to bind in writing another to an agreement to arbitrate future disputes, such purpose should be accomplished in a way that each party to the arrangement will fully and clearly comprehend that the agreement to arbitrate exists and binds the parties thereto." That reflects a sound public policy. Indeed, in the very pamphlet which contains the rules whose arbitration clause is here sought to be invoked, the suggestion appears that the arbitration provision be explicitly set forth in the main contract.

The order appealed from should be affirmed, with $20 costs and disbursements.

PECK, P. J., COHN, VAN VOORHIS and HEFFERNAN, JJ., concur.

Order unanimously affirmed, with $20 costs and disbursements to petitioner-respondent. [See *post,* p. 861.]