MARINE TRANSIT·CORP. ET AL. *v.* DREYFUS ET AL.

No. 172.   Argued December 10, 11, 1931.—Decided January 4, 1932.

*Mr. Horace. L. Cheyney* for petitioners.

266

Mr. *George V. A. McCloskey* for respondents.

*Messrs. Julius Henry Cohen* and *Kenneth Dayton,* by special leave of Court, filed a brief on behalf of the Cham-

ber of Commerce of the State of New York et al., as *amici curiae.*

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

The petitioner, Marine Transit Corporation, entered into a written booking agreement with the respondents, Louis Dreyfus & Company, to furnish insurable canal tonnage for about 200,000 bushels of wheat, to be carried from Buffalo to New York. The contract provided that it should be "subject to New York Produce Exchange Canal Grain Charter Party No. 1 as amended." That charter party contained the following provision as to disputes:

"All disputes arising under this contract to be arbitrated before the Committee on Grain of the New York Produce Exchange whose decision shall be final and binding."

Under this contract, the Marine Transit Corporation, in September, 1928, provided the barge *Edward A. Ryan* to carry 19,200 bushels of the above-stated amount. This was a shipment, as the bill of lading of the Marine Transit Corporation shows, to the order of the Bank of Nova Scotia and was from Fort William, Ontario, 'in bond, for export,' to be delivered 'on surrender of original Lake bill of lading properly endorsed.' While in tow of the petitioner's tug *Gerald A. Fagan* on the New York Barge Canal, and approaching the federal lock at Troy, the *Edward A. Ryan* struck the guide wall and sank with its cargo. The respondents, Louis Dreyfus & Company, filed a libel in admiralty against the Marine Transit Corporation *in personam,* and against the tug *Gerald A. Fagan, in rem,* to recover damages for the loss of the wheat. The libel was also against a barge *John E. Enright,* one of the boats in the tow, but the action as to that boat was subsequently discontinued. A claim for

the tug *Gerald A. Fagan* was made by the Marine Transit Corporation and a stipulation for value was filed by it, as claimant, in the sum of $26,000, with the usual provision that the stipulation should be void if the claimant and the stipulator (the Continental Casualty Company) should abide by all orders of the court and pay the amount awarded by its final decree, and that otherwise the stipulation should remain in full force.

After answer to the libel had been filed by the Marine Transit Corporation, as respondent and as claimant of the tug *Gerald A. Fagan,* the libellants moved for a reference of the dispute to arbitration in accordance with the provision of the booking contract. This motion was granted " only as to the issues raised by the contract between the libellants and the Marine Transit Corporation," and the latter was ordered to submit to arbitration as to these issues before the Committee on Grain of the New York Produce Exchange. The arbitration proceeded and resulted in an award against the Marine Transit Corporation for the sum of $23,016, with interest and the costs and expenses of the arbitration. The award was confirmed by the District Court and an order—in substance, a final decree—was entered for the recovery by the libellants against the Marine Transit Corporation of the amount of the award, with the further provision that, if payment was not made within ten days, execution should issue against the Marine Transit Corporation and the stipulator. A motion to restrain the libellants from recovering from the claimant or its stipulator on behalf of the tug *Gerald A. Fagan* was denied. The decree entered upon the award was affirmed by the Circuit Court of Appeals, 49 F. (2d) 215, and the case comes here on writ of certiorari.

There is no question that the controversy between the petitioner and the respondents was within the arbitration clause of the booking contract. That provision was valid

*Red Cross Line* v. *Atlantic Fruit Co.*, 264 U. S. 109, 122, and, as it related to all disputes arising under the contract, it applied to the controversy with the Marine Transit Corporation as operating owner of the tug *Gerald A. Fagan,* which was used for the agreed transportation. The questions presented are (1) whether the action of the District Court was authorized by the United States Arbitration Act,[1] and (2) whether that Act, as thus applied, is constitutional.

---

[1]Act of February 12, 1925, c. 213, 43 Stat. 883; [U. S. C., Title 9, §§ 1–15]. The title of the Act and §§ 1 to 4, inclusive, and §§ 6, 7, 8, a portion of § 9, and §§ 13 and 14 are as follows:

"CHAP. 213.—An Act To make valid and enforceable written provisions or agreements for arbitration of disputes arising out of contracts, maritime transactions, or commerce among the States or Territories or with foreign nations.

"*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That 'maritime transactions,' as herein defined, means charter parties, bills of lading of water carriers, agreements relating to wharfage, supplies furnished vessels or repairs to vessels, collisions, or any other matters in foreign commerce which, if the subject of controversy, would be embraced within admiralty jurisdiction; ' commerce,' as herein defined, means commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation, but nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.

"Sec. 2. That a written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

*First.* In construing the statute, we deal only with the questions raised by the present record. The loss occurred

"Sec. 3. That if any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

"Sec. 4. That a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any court of the United States which, save for such agreement, would have jurisdiction under the judicial code at law, in equity, or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by law for the service of summons in the jurisdiction in which the proceeding is brought. The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement: *Provided,* That the hearing and proceedings under such agreement shall be within the district in which the petition for an order directing such arbitration is filed. If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue. Where such an issue is raised, the party alleged to be in default may, except in cases of admiralty, on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by law for referring to a jury issues in an equity action, or may specially call a jury for that purpose. If the jury find that no agreement in writing for arbitration

upon a waterway which was part of the navigable waters of the United States, *The Robert W. Parsons,* 191 U. S. 17, and while the cargo was being transported by the petitioner under a maritime contract. The subject matter of the controversy thus lay within the jurisdiction of admiralty. The ambiguities of the statute have been

was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed. If the jury find that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof.

"Sec. 6. That any application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided.

"Sec. 7. That the arbitrators selected either as prescribed in this Act or otherwise, or a majority of them, may summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case. The fees for such attendance shall be the same as the fees of witnesses before masters of the United States courts. Said summons shall issue in the name of the arbitrator or arbitrators, or a majority of them, and shall be signed by the arbitrators, or a majority of them, and shall be directed to the said person and shall be served in the same manner as subpoenas to appear and testify before the court; if any person or persons so summoned to testify shall refuse or neglect to obey said summons, upon petition the United States court in and for the district in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person or persons before said arbitrator or arbitrators, or punish said person or persons for contempt in the same manner now provided for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States.

"Sec. 8. That if the basis of jurisdiction be a cause of action otherwise justiciable in admiralty, then, notwithstanding anything herein to the contrary, the party claiming to be aggrieved may begin his proceeding hereunder by libel and seizure of the vessel or other property of the other party according to the usual course of admiralty

stressed in argument, but we think that its provisions embrace a case such as the one before us[2] and it is not necessary to discuss others. Section 4 authorizes a court, which would otherwise have jurisdiction in admiralty ' of the subject matter of a suit arising out of the contro-

---

proceedings, and the court shall then have jurisdiction to direct the parties to proceed with the arbitration and shall retain jurisdiction to enter its decree upon the award.

" Sec. 9. If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in the next two sections. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.

" Sec. 13. That the party moving for an order confirming, modifying, or correcting an award shall, at the time such order is filed with the clerk for the entry of judgment thereon, also file the following papers with the clerk:

"(a) The agreement; the selection or appointment, if any, of an additional arbitrator or umpire; and each written extension of the time, if any, within which to make the award.

"(b) The award.

"(c) Each notice, affidavit, or other paper used upon an application to confirm, modify, or correct the award, and a copy of each order of the court upon such an application.

" The judgment shall be docketed as if it was rendered in an action.

" The judgment so entered shall have the same force and effect, in all respects, as, and be subject to all the provisions of law relating to, a judgment in an action; and it may be enforced as if it had been rendered in an action in the court in which it is entered.

" Sec. 14. That this Act may be referred to as ' The United States Arbitration Act.'"

[2] The Commitee on the Judiciary of the House of Representatives, in its report upon the bill, which with the Senate amendment became the Act in question, said:

versy between the parties' to a written agreement for arbitration, to 'make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.' Section 8 explicitly provides that where a cause of action is 'otherwise justiciable in admiralty, then, notwithstanding anything herein to the contrary, the party claiming to be aggrieved may begin his proceeding hereunder by libel and seizure of the vessel or other property of the other party according to the usual course of admiralty proceedings,' and the court may then 'direct the parties to proceed with the arbitration and shall retain jurisdiction to enter its decree upon the award.'

In this instance, the libel against the vessel came directly within the provision of § 8. But the petitioner insists that the District Court 'had no power under that section to make an order for arbitration of the proceeding against the Marine Transit Corporation, *in personam.*' Section 8, it is said, applies 'only to proceedings *in rem* or proceedings *in personam* where there has been an attachment of the property of the respondent,' and there was no such attachment in this case. And it is contended that, aside from § 8, the Act does not provide for the granting of an order for arbitration 'in a pending suit.' With respect to the last contention, it may be observed that § 3 provides for a stay in a pending suit until arbitration has been had in accordance with the terms of the agreement, and it would be an anomaly if the court could grant such a stay and could not direct the arbitration to proceed,

---

"The purpose of this bill is to make valid and enforcible agreements for arbitration contained in contracts involving interstate commerce or within the jurisdiction of admiralty, or which may be the subject of litigation in the federal courts. . . . The remedy is founded also upon the federal control over interstate commerce and over admiralty." House Rep. No. 96, 68th Cong., 1st sess. See, also, Cong. Rec., vol. 66, pt. 3, 68th Cong., 2d sess., pp. 3003, 3004.

although the court, admittedly, could have made an order for the arbitration if no suit had been brought. We think that the petitioner's argument is based upon a misconception of the statute. The intent of § 8 is to provide for the enforcement of the agreement for arbitration, without depriving the aggrieved party of his right, under the admiralty practice, to proceed against ' the vessel or other property ' belonging to the other party to the agreement. The statutory provision does not contemplate ' the vessel or other property,' which may be seized, as being the party to the arbitration agreement. By the express terms of § 8, the libel and seizure are authorized as an initial step in a proceeding to enforce the agreement for arbitration, and it is the parties to that agreement who may be directed to proceed with the arbitration. Here, the Marine Transit Corporation was the party to the arbitration agreement. It had used the tug as a facility for the transportation of the libellants' wheat, and the dispute as to liability was within the promise to arbitrate. If there was to be an order for arbitration, it would appropriately run against the Marine Transit Corporation to enforce that obligation. It was not necessary or proper that the order should run against the tug. Nor was it necessary that the court in directing the arbitration should attempt to split the proceeding with respect to the demand in the suit *in personam* against the corporation and that *in rem* against the tug. The Marine Transit Corporation was before the court both as respondent and as owner and claimant of the vessel seized, and the agreement to arbitrate bound the corporation in both capacities. We conclude that the order directing the arbitration of the issues arising under the contract between the libellants and the Marine Transit Corporation was authorized by the statute.

We do not conceive it to be open to question that, where the court has authority under the statute, as we find

that it had in this case, to make an order for arbitration, the court also has authority to confirm the award or to set it aside for irregularity, fraud, *ultra vires* or other defect.[3] Upon the motion to confirm the award in this case, objections to the proceedings before the arbitrators were overruled by the District Court and are not pressed here. It is, however, urged against the award that it was signed by only four of the five arbitrators. The statute is silent with respect to a decision by a majority, but it does authorize action by a majority in compelling the attendance of witnesses (§ 7). In the absence of statutory requirement, the question as to the necessity of unanimity in the decision on the merits would be determined by the arbitration agreement, and it does not appear that under the agreement in this instance unanimity was needed. Nor does the record show that specific objection upon this point was taken in the District Court upon the motion for confirmation; and the rules of the New York Produce Exchange with respect to arbitrations under its Canal Grain Charter Party No. 1 (to which the petitioner's booking agreement was made subject) are not set forth. We think that there was no error in the ruli. of the Circuit Court of Appeals upon this point.

The petitioner also insists that, under § 9, a judgment may be entered upon the award only if the parties have so agreed in their contract for arbitration and that the agreement here does not so provide. But the agreement for arbitration stipulated that the award should be 'final and binding.' The award was accordingly binding upon the Marine Transit Corporation both as respondent and as the owner and claimant of the tug, and the District Court entered its decree upon the award against that corporation under the authority expressly conferred by § 8.

---

[3] See §§ 10 to 12.

The Circuit Court of Appeals also upheld the decree as against the stipulator, as its stipulation conformed to Admiralty Rule 8 of the Southern District of New York [4] and the decree was in accord with the stipulation and admiralty practice. *The Palmyra*, 12 Wheat. 1, 10; *The Wanata*, 95 U. S. 600, 611. We express no doubt as to the correctness of this conclusion, which the petitioner contests, but we have no occasion to deal with the question, as the stipulator has taken no steps to obtain a review of the decree in this Court.

We find no ground for disturbing the decree as unauthorized by the statute.

*Second.* The constitutional question raised by this application of the statute, is whether it is compatible with the maintenance of the judicial power of the United States as extended to cases of admiralty and maritime jurisdiction (Const. Art. III).

In *Red Cross Line* v. *Atlantic Fruit Co., supra* (at pp. 122, 123), this Court pointed out that in admiralty ' agreements to submit controversies to arbitration are valid,' and that ' reference of maritime controversies to arbitration has long been common practice.' 'An executory agreement,' said the court, ' may be made a rule of court ' and the ' substantive right created by an agreement to submit disputes to arbitration is recognized as a perfect obligation.' The question, then, is one merely as to the power of the Congress to afford a remedy in admiralty to enforce such an obligation. It was because the question was one of remedy only, that this Court decided that a State, by virtue of the clause saving to suitors ' the right

---

[4] This rule is as follows: " Such stipulation shall contain the consent of the stipulators, that if the libellant or petitioner recover, the decree may be entered against them for an amount not exceeding the amount named in such stipulation and that thereupon execution may issue against their goods, chattels, lands, and tenements or other real estate."

of a common law remedy,'[5] had the power ' to confer upon its courts the authority to compel parties within its jurisdiction to specifically perform an agreement for arbitration, which is valid by the general maritime law, as well as by the law of the State,' and is contained in a maritime contract made within the State and there to be performed. *Red Cross Line* v. *Atlantic Fruit Co., supra,* at p. 124. The general power of the Congress to provide remedies in matters falling within the admiralty jurisdiction of the federal courts, and to regulate their procedure, is indisputable. The petitioner contends that the Congress could not confer upon courts of admiralty the authority to grant specific performance. But it is well settled that the Congress, in providing appropriate means to enforce obligations cognizable in admiralty, may draw upon other systems. Thus the Congress may authorize a trial by jury in admiralty, as it has done in relation to certain cases arising on the Great Lakes.[6] Courts of admiralty may be empowered to grant injunctions, as in proceedings for limitation of liability.[7] Similarly, there can be no question of the power of Congress to authorize specific performance when that is an appropriate remedy in a matter within the admiralty jurisdiction. As Chief Justice Taney said in *The Genesee Chief,* 12 How. 443, 460: " The Constitution declares that the judicial power of the United States shall extend to ' all cases of admiralty and maritime jurisdiction.' But it does not direct that the court shall proceed according to ancient and established forms, or shall adopt any other form or mode of practice. . . . In ad-

---

[5] Judicial Code, § 24 (3); U. S. C., Tit. 28, § 41 (3).

[6] Act of February 26, 1845, c. 20, 5 Stat. 726; R. S. 566, U. S. C., Tit. 28, § 770; *The Genesee Chief,* 12 How. 443, 459, 460; *The Eagle,* 8 Wall. 15, 25.

[7] *Hartford Accident & Indemnity Co.* v. *Southern Pacific Co.,* 273 U. S. 207, 218.

miralty and maritime cases there is no such limitation as to the mode of proceeding, and Congress may therefore in cases of that description give either party right of trial by jury, or modify the practice of the court in any other respect that it deems more conducive to the administration of justice."

In this instance a remedy is provided to fit the agreement. The Congress has authorized the court to direct the parties to proceed to arbitration in accordance with a valid stipulation of a maritime contract, and to enter a decree upon the award found to be regular and within the terms of the agreement. We think that the objection on constitutional grounds is without merit.

*Decree affirmed.*