339 F.2d 901
 GREENWICH MARINE, INCORPORATED, Libelant, Appellant, Cross-Appellee,
v.
S.S. ALEXANDRA, her engines, boilers, etc., Fidelity
Shipping Company, Ltd., Respondent, Appellee,
Cross-Appellant, and Ministry of Supply
of the United Arab Republic, Respondent.
 No. 22, Docket 28869.
 United States Court of Appeals Second Circuit.
 Argued Sept. 29, 1964.
Decided Jan. 7, 1965.
 
 Woodson D. Scott, New York City (Lord, Day & Lord, New York City, on the brief) (Henry C. Blackiston, New York City, of counsel), for libelant, appellant, cross-appellee.
 James D. Hanlon, New York City (Zock, Petrie, Sheneman & Reid, New York City, on the brief), for respondent, appellee, cross-appellant.
 Before FRIENDLY, KAUFMAN and MARSHALL, Circuit Judges.
 MARSHALL, Circuit Judge:
 
 
 1
 Fidelity Shipping Co., Ltd. (Fidelity) chartered the S. S. Alexandra to Greenwich Marine, Inc. (Greenwich), and Greenwich in turn chartered the ship to the Ministry of Supply of the United Arab Republic (Ministry). The Alexandra made the scheduled voyage from New York to ports in the United Arab Republic and sometime after the voyage Greenwich filed a libel against the Alexandra, Fidelity and the Ministry. The libel alleged that the Ministry refused to pay Greenwich $92,766.96 due for the carriage of the cargo, that the Ministry had claimed a loss and damage to the cargo amounting to $267,787.35, and that if there was any such loss and damage, and if Greenwich was held liable for that amount, Fidelity would have to indemnify it. Greenwich also claimed that the Ministry failed to appoint an arbitrator and proceed to arbitration as required by the contract; and that Fidelity was similarly delinquent in its obligation to arbitrate. The libel purported to be 'filed pursuant to the provisions of the Federal Arbitration Act,' 9 U.S.C. 1-14, and it requested the District Court to order 'that arbitration proceed in the manner provided for' in the contracts and that the ship be seized 'in accordance with' Section 8 of the Act. On the same day the libel was filed, process in the form of a monition was issued, and the Alexandra was seized and attached by the United States Marshal for the Southern District of New York. Fidelity appeared, filed its claim as owner, and substituted corporate security in the amount of $270,000 for the Alexandra and finally, six days after the original seizure, the Alexandra was discharged from custody by an order of the court.
 
 
 2
 Fidelity moved to have the libel against it and the Alexandra dismissed on the ground that the libel failed to state a cause of action; the Ministry moved for a stay of the proceedings in the suit so far as the Alexandra and Fidelity were concerned and for an order directing that arbitration take place solely between Greenwich and the Ministry; and Greenwich petitioned for an order to compel arbitration under sections 4 and 8 of the Act. The Ministry's motion for a stay was denied; and Greenwich's petition to compel arbitration was, under the authority of Section 4 of the Act, granted-- the Ministry was required to arbitrate with Greenwich over the freight of $92,766.96 claimed by Greenwich and over the $267,787.35 claimed by the Ministry against Greenwich for cargo damage and loss, and Fidelity was ordered to arbitrate with Greenwich over the indemnity claim. However, the court found that the libel based on this indemnity claim did not state 'any cause of action' justiciable in admiralty, but instead was 'entirely speculative and hypothetical.' Accordingly the court decreed that the libel against the Alexandra and Fidelity be dismissed and that the security obtained under the color of a proper libel be cancelled and discharged (although such cancellation and discharge was stayed pending final determination of any appeal). Greenwich appealed from this decree dismissing the libel, and we affirm.
 
 
 3
 Section 4 of the Federal Arbitration Act, 9 U.S.C. 4, permits a party to petition a United States district court for an order compelling arbitration in a maritime dispute covered by an arbitration agreement, but it does not empowerthe district court to require the party on the wrong end of the order to post security and much less does the section itself require the posting of security. The parties have therefore assumed, with good reason, that Greenwich would not have been entitled to security if it merely filed a petition for the order under section 4 compelling arbitration. The parties have also assumed, once again with good reason, that if Greenwich properly libeled either the Alexandra or Fidelity on a cause of action justiciable in admiralty, and not one solely arising from the failure to arbitrate, Greenwich would be entitled, under traditional admiralty procedure, to have the Alexandra seized. See Admiralty Rules 2 and 9. These assumptions are not changed by section 8 of the Federal Arbitration Act, 9 U.S.C. 8. Section 8 provides that a party may obtain an order compelling arbitration on a claim even though the party chose to initiate a suit in admiralty on that same claim; it also provides that if this suit is commenced, the order can be obtained within the proceeding and that there is no need to follow the procedure prescribed in section 4 of commencing a separate procedure by filing a petition. The purpose of section 8 is to relieve a party from making an election between the libel-cum-seizure remedy, on the one hand, and the order-to-arbitrate remedy, on the other hand-- not to append the right to seizure to the order-to-arbitrate remedy of section 4. See Anaconda v. American Sugar Refining Co., 322 U.S. 42, 64 S.Ct. 863, 88 L.Ed. 1117 (1944); Marine Transit Co. v. Dreyfus, 284 U.S. 263, 52 S.Ct. 166, 76 L.Ed. 282 (1932). Hence, the principal question is whether Greenwich's libel stated a good 'cause of action' in admiralty against the Alexandra and Fidelity, thereby entitling it to have the U.S. Marshal seize the Alexandra .[1] The District Judge answered this question in the negative, and we are not convinced that he erred.
 
 
 4
 Greenwich attempted to make out a 'cause of action' for indemnification-- claiming that Fidelity was required to indemnify Greenwich for whatever amount Greenwich has to pay the Ministry for the cargo damage. But the district court properly held that this claim was premature: no judgment had been entered against Greenwich for the cargo damage, no suit had been instituted against Greenwich for the cargo damage, the Ministry, who already appeared in this action, had not sought to cross-libel Greenwich for the cargo damage, and in fact the Ministry had instituted two separate actions against the Alexandra and Fidelity for the same cargo damage-- one in the Egyptian Court in Port Said and the other in the Eastern District of New York. At the time Fidelity moved to dismiss the libel, it was possible, and exceedingly probable that Greenwich would never need to sue Fidelity for indemnification, since the Ministry decided to sue Fidelity directly. Had Judge Wyatt allowed Greenwich's libel against the Alexandra and Fidelity to go forward there would be two parallel law suits being prosecuted against Fidelity by different parties for the same conduct. The waste of judicial energies and the burden on Fidelity would be manifest, especially since Fidelity had already posted security approximating $270,000 in each of the suits commenced against it by the Ministry. Greenwich may have only been interested in obtaining an order compelling Fidelity to arbitrate, not in having the indemnity libel go forward at the time Fidelity moved to dismiss, but in assessing the adequacy of a libel it is fair to assume that the libelant would be prepared to and interested in prosecuting its claim at that time, if the court refused to compel arbitration. Although Judge Wyatt could have avoided this duplication by staying the trial of the action, we cannot require him to choose that alternative as opposed to the equally reasonable alternative of dismissing the libel without prejudice.
 
 
 5
 First, and most importantly, the admiralty judge, who is asked to disregard the prematurity of plaintiff's claim, must be compared to the Chancellor 'balancing the equities,' and we would be entitled to reverse him only if he clearly abused his discretion-- which Judge Wyatt surely did not do-- not simply because we would have resolved the equities differently. In cases such as The Lassell, 193 F. 539 (E.D.Pa.1912), The Horsa, 232 F. 993 (E.D.S.C.1915) and Moran Towing & Transport Co. v. United States, 56 F.Supp. 104 (S.D.N.Y.1944) it was the district judge who, in light of the overwhelming equitable position of the plaintiff, chose to disregard the prematurity of plaintiff's claim. The inherent power to adapt an admiralty rule to the equities of a particular situation is entrusted to the sound discretion of the district judge sitting as an admiralty judge, and not to the circuit judges sitting in review. Only if our review is so limited to determining whether he acted within the bounds of his discretion will the allocation of functions between the trial court and the reviewing court be preserved, and the sense of responsibility of the trial court strengthened.
 
 
 6
 Secondly, although some district judges sitting in admiralty have been willing under certain circumstances to ignore the prematurity of a claim, this does not mean that all doctrines of accrual have been abrogated in admiralty. For example, doctrines of accrual have a continuing vitality in determining whether a statute of limitations has run. The prematurity objection has been ignored only in isolated situations under peculiar factual circumstances and, to be sure, in some cases it has been sustained. In Mitsui Steamship Co. Ltd. v. Jarka Corp., 218 F.Supp. 424 (E.D.Pa.1963), for example, Judge Kraft dismissed an indemnity libel for failure to state a cause of action because it was found to be premature and 'nothing more than an abstraction,' even though, unlike the present case, a suit against the party seeking indemnification was pending in another court. See also West Africa Navigation, Ltd. v. Nacirema Operating Co., 191 F.Supp. 131 (E.D.Pa.1961), for a similar result on the civil side of the court in a maritime matter.
 
 
 7
 Thirdly, the factual pattern of the present case is quite unlike that in those few isolated cases where the district court chose to overrule the prematurity objection. In The Lassell, 193 F. 539 (E.D.Pa.1912), the ship had stranded in the course of its voyage, and libelant, by lightening her load freed her at about 5 a.m. on Thursday. Libelant replaced the cargo and coal by midnight on Thursday, and she was set to resume her voyage on Friday morning. On Thursday evening at 7 o'clock, five hours before the work was complete, the marshal seized the Lassell under a libel seeking payment for the services. The district judge rejected the defense that 'the suit was prematurely brought before the work of reloading had been finished.' In doing so the judge considered the appropriateness of the demand for security, but, unlike the present case, the claim matured several hours after the libel was filed and the libel was accordingly amended the next day, long before the district judge passed on the prematurity objection. Even at the time the libel was filed and the ship seized, the libelant's claim in Lassell was less premature than Greenwich's indemnity claim; at the time Greenwich filed its libel and seized the Alexandra it was impossible to predict when and if Greenwich's claim would mature, while in Lassell there was no doubt that the libelant's claim would mature within a few short hours. Similarly, in The Horsa, 232 F. 993 (E.D.S.C.1915), the defect in the libel would be cured within a fixed and ascertainable period and the district court, in order to avoid an 'inequitable and analogous' result, refused to dismiss the libel and dissolve the attachment because that period had not yet lapsed. Under South Carolina law a wrongful death action could only have been brought by an administrator, and two weeks had to lapse between the application for administration and the issuance of the administration; the widow in Horsa had made the necessary application, but the two weeks had not yet elapsed, although she had, so the court believed, 'a perfectly meritorious right of action.' In both Horsa and Lassell the district court considered the risk of losing the security in evaluating the prematurity defense, but neither case suggests that the mere risk of losing security requires a district court to ignore the prematurity of a claim. Moran Towing & Transport. Co. v. U.S., 56 F.Supp. 104 (S.D.N.Y.1944) bears a closer resemblance to the present case, but it is not controlling, even aside from the fact that its reasoning has been questioned by the more recent cases of Mitsui and West African Navigation, supra. In Moran a suit relating to the primary obligation was commenced in a state court against the libelant, who sought to but failed to vouch in the respondent for indemnification in that suit. The district judge was able to conceive of his rejection of the prematurity defense as merely giving effect to Admiralty Rule 56 which was unavailable in the state court. Judge Wyatt, in contrast, would have been unable to justify a rejection of the defense of prematurity by analogizing the situation to what would be the result under Rule 56; the Ministry has not yet sued Greenwich and it did not seem that the Ministry would commence that suit, or for that matter even raise the alleged damage claim against Greenwich as a cross-libel, since the Ministry had instituted two suits against Fidelity for the cargo damage and the Ministry and Greenwich have been ordered to arbitrate. Moran can be further distinguished on the ground that the district judge there reasoned that a dismissal of the complaint for prematurity would be inequitable, for it would put the libelant to the risk of having his claim cut off by the statute of limitations while the burden imposed on therespondent by not dismissing the libel would be negligible, since the trial of the indemnity claim could be stayed until the judgment in the state court was rendered. There is no risk of a cut off by the statute of limitations in the present case, and Judge Wyatt was of course entitled to find that there would be nothing inequitable about Greenwich losing the security. Although Fidelity is a Greek corporation, and the Alexandra not likely to remain in port indefinitely, there is no showing that Fidelity was not morally or financially responsible, that it had no other property in the United States or New York, that the Alexandra would never return to the United States, or that Greenwich could not have protected itself in the contract by requiring Fidelity to post security to cover all possible indemnity claims. Furthermore, Judge Wyatt was entitled to look on the seizure of Fidelity's ship-- the real practical result of overruling the prematurity objection-- as a burden on the respondent, not at all present in Moran, and a particularly harsh burden, since it would have been impossible for the court to fix a predictable and ascertainable point when the need for security would be terminated and Fidelity had already posted security for the same exact claim in the two suits commenced by the Ministry against Fidelity. There is an important difference between simply permitting a suit to stop the statute of limitations from running and permitting seizure of a vessel as security for a claim that may never fully ripen. This particular seizure may have only interfered with the Alexandra's voyage for a few days before a corporate security was substituted, but we are not prepared to say that the seizure and the substitution was not costly and burdensome. Fidelity must pay for a corporate security and the cost of an Underwriter's Letter of Undertaking is reflected in increased premiums. Although a point may be reached where it would be fair to put Fidelity to this inconvenience, it is not at all clear that Judge Wyatt erred in holding that on the facts before him this point had not yet been reached.
 
 
 8
 The fact that declaratory judgments can now be obtained in admiralty, see Admiralty Rule 59, does not dictate a different result. At no time-- even on the appeal-- did Greenwich suggest that it was seeking declaratory relief; the libel specifically stated that it was filed pursuant to the Federal Arbitration Act, not the Declaratory Judgment Act, 28 U.S.C. 2201. And Section 8 of the Federal Arbitration Act looks to what is the basis of jurisdiction (and requires that to be a cause of action justiciable in admiralty), not what could have been the basis of jurisdiction. Furthermore, although the requirements of maturity are more lenient when a party is seeking declaratory relief than when he is seeking coercive relief, this does not necessarily mean that Greenwich stated a claim mature enough for declaratory relief. 28 U.S.C. 2201 restricts declaratory relief to situations where there is an 'actual controversy,' and while we need not decide whether Greenwich's indemnity claim gave rise to such a controversy, it could be maintained that Judge Wyatt would not have abused his discretion, see Borchard, Declaratory Judgments 61, if he dismissed a claim by Greenwich for declaratory relief, on the same ground that he dismissed the one for coercive relief-- namely, that it was 'entirely speculative and hypothetical.' Finally, even if we were willing to view Greenwich's libel as a request for declaratory relief, and even if we were willing to hold that Judge Wyatt was clearly wrong in finding Greenwich's claim 'entirely speculative and hypothetical,' it is difficult to see how this would be of any assistance to Greenwich. Greenwich's primary object in attempting to satisfy section 8 was to have Fidelity post security and at the same time obtain an order requiring Fidelity to arbitrate. Section 8 does not provide that if a cause of action could be made out, then the court must or could require the respondent to post security and order the respondent to arbitrate. Instead it assumes that the seizure would be already effectuated, that the party would get security at the filing of the libel according to traditional admiralty rules. Yet, if Greenwich filed a libel merely seeking declaratory relief, presumably Greenwich would not be entitled to security after Fidelity appeared in the proceeding. Seizure in admiralty has two purposes, assuring the appearance of the respondent and security for satisfaction of the judgment. See generally Benedict, Admiralty (6th ed. 1940), 345-55. The first purpose would be satisfied when Fidelity made its appearance in the suit, as he did by moving to dismiss, and the attachment could then be discharged if it served no other purpose. And if Greenwich merely sought declaratory relief, there would be no other purpose in requiring security, at least in the quantum demanded by Greenwich, for by definition there would be no coercive or monetary primary judgment to be satisfied.
 
 
 9
 We have not been called upon to decide whether Judge Wyatt erred in holding that 'the dispute between Greenwich * * * and Fidelity must be arbitrated' and ordering, under section 4, that the arbitration proceed. However, we are prepared to say that this decision of Judge Wyatt is not necessarily inconsistent with his decision that the indemnity claim was not sufficiently mature to constitute a cause of action. A dispute may be arbitrable within the specific meaning of the arbitration clause, and not give rise to a justiciable cause of action-- especially in light of the federal policy to construe liberally arbitration clauses, Metro Industrial Painting Corp. v. Terminal Const. Co., 287 F.2d 382 (2 Cir. 1961), and the broad reach of the agreement clause between Fidelity and Greenwich, requiring arbitration 'should any dispute arise between Owners and the Charterers.'
 
 
 10
 Although Judge Wyatt dismissed Greenwich's libel on Fidelity's motion, he denied Fidelity costs for the premium paid on the corporate security and Fidelity cross-appealed from that part of the decree. Counterbalancing Fidelity's success on its motion is the factor that this expense was unnecessarily incurred, for the Alexandra could have been released from the seizure if a premium-free Underwriter's Letter of Undertaking were substituted. Judge Wyatt weighed these factors and he did not abuse his discretion to award costs by finding the latter factor controlling.
 
 
 11
 We therefore affirm that part of the decree below dismissing Greenwich's libel and denying Fidelity costs.
 
 
 12
 On December 21, 1964, after these opinions were written though not yet filed, appellant filed a motion for leave 'to file a supplemental libel' and requested 'such other relief that may be just.' The basis of the motion was the apparently undisputed fact that the arbitration between Greenwich and the Ministry, which had been conducted pursuant to Judge Wyatt's original order, had been concluded on December 8, 1964 by awarding the Ministry $297,560.19.
 
 
 13
 There can be no doubt that if at the time of filing the libel, there was an outstanding arbitration award against Greenwich for the cargo damage, then one substantial element of the prematurity of Greenwich's indemnity claim against Fidelity would have been removed. It is important, however, that this arbitration award was rendered long (some seventeen months, to be exact) after the original libel was filed and the Alexandra seized, and that the arbitration was conducted pursuant to an order of the district judge in the very proceeding commenced by the filing of that libel. The propriety of the seizure of the Alexandra is the primary issue at stake in this litigation and that issue must be controlled for the most part by the facts existing at the time of the seizure or when the district judge passed judgment on the propriety of the seizure. To have this subsequent arbitration award mature the originally premature claim and thereby justify the seizure would have a rather obvious bootstrap quality. Adhering to our affirmance of Judge Wyatt's dismissal may no longer have great practical consequences in this particular case, especially since Greenwich is, of course, free to file now another libel against Fidelity and to seek a seizure of some of Fidelity's property; yet a concern for future cases leads us to squelch all hope that a litigation may become sufficiently protracted so as to enable a premature claim to ripen just before judgment is rendered on appeal.
 
 
 14
 Motion denied.
 
 
 15
 FRIENDLY, Circuit Judge (dissenting).
 
 
 16
 I am persuaded that under the admiralty precedents Greenwich asserted a cause of action sufficiently ripe to meet even the demanding interpretation Judge Wyatt gave to 8 of the Federal Arbitration Act. More important, I believe that he interpreted 8 too narrowly-- clearly an issue of law and not a matter of discretion-- and that a libel is good under 8 if it asserts a valid claim for arbitration of a maritime controversy, as all of us agree appellant's did.
 
 Section 8 of the Arbitration Act provides:
 
 17
 'If the basis of jurisdiction be a cause of action otherwise justiciable in admiralty, then, notwithstanding anything herein to the contrary, the party claiming to be aggrieved may begin his proceeding hereunder by libel and seizure of the vessel or other property of the other party according to the usual course of admiralty proceedings, and the court shall then have jurisdiction to direct the parties to proceed with the arbitration and shall retain jurisdiction to enter its decree upon the award.'
 
 
 18
 The district judge and my brothers interpret 8 as merely protecting a libelant with a traditional maritime cause of action from having to elect between suing in admiralty, with its remedy of seizure, in disregard of the arbitration agreement, and pursuing his contractual right to arbitrate. To me that is not its full thrust. Section 8 must be construed along with 4, which provides in part:
 
 
 19
 'A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.'
 
 
 20
 I read the phrase 'If the basis of jurisdiction be a cause of action otherwise justiciable in admiralty' in 8 as simply a cross-reference to the provision just quoted from 4. Section 8 thus says that when the maritime nature of the controversy would give jurisdiction in admiralty apart from the arbitration clause, the person seeking arbitration may begin his proceeding to compel arbitration by libel and seizure, rather than by the petition otherwise prescribed in 4, although his libel, like a complaint based on some other jurisdictional ground, will be dismissed for failure to state a claim on which relief can be granted if he does not make out a case for arbitration. Cf. Bell v. Hood, 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939, 13 A.L.R.2d 383 (1946). The requisite showing of jurisdiction is made by alleging the kind of claim that the district court would have had power to entertain, here the breach of a warranty in the charter of the Alexandra-- not necessarily one on which a court, as distinguished from arbitrators, would grant relief, an issue of only academic interest when an arbitration clause is invoked. Plainly, when the basis of district court jurisdiction is diverse citizenship, the allegation of an arbitrable claim would be enough to make available in a civil action the preliminary remedies of garnishment or attachment now permitted under certain circumstances by F.R.Civ.P. 4(e); the same ought be true for seizure when the basis is admiralty.
 
 
 21
 The narrower reading assumes that although Congress meant that the showing of a maritime contract and a dispute arbitrable thereunder sufficed to empower federal courts to compel arbitration under 4, to enter judgment under 9 if the contract so provided, and to review the award under 10 and 11, it boggled at extending the provisional remedy under 8 quite so far, and left an uncertain penumbral area in which a party may have all the other benefits of the Arbitration Act but be denied those of 8. While the words of 8, read in isolation, are susceptible of such a construction, they surely do not compel it, as opposed to the view that 8 was intended to be coextensive with the admiralty side of 4. To read 8 as my brothers do means that a court must decide two preliminary questions rather than one; it means also that unless a libel filed under 8 falls within the smaller circle thought to be there delimited, a libelant must start all over again with a petition under 4. I see no reason for supposing that Congress contemplated such exaggerated nicety; its purpose rather was to give the benefit of admiralty process to any party who had agreed to subject a maritime claim to the new remedy of arbitration which Congress meant to encourage and proved himself entitled to that remedy.
 
 
 22
 This broader construction accords with what the Supreme Court has indicated in its decisions dealing with 8. 'By the express terms of section 8, the libel and seizure are authorized as an initial step in a proceeding to enforce the agreement for arbitration * * *.' Marine Transit Corp. v. Dreyfus, 284 U.S. 263, 275, 52 S.Ct. 166, 169, 76 L.Ed. 282 (1932). Congress 'may have thought that in many cases in admiralty if the aggrieved party could not seize the ship of his opponent, an arbitral award would be wholly unenforceable as the vessel might seldom or never again be within the jurisdiction of our courts.' The Anaconda v. American Sugar Ref. Co., 322 U.S. 42, 46, 64 S.Ct. 863, 865, 88 L.Ed. 1117 (1944). To me these opinions say just what I have tried to say here-- that the maritime nature of the controversy permits the filing of a libel with the attendant remedies, although the libel will be dismissed and a seizure vacated if the claim for arbitration is not made out. Thus since the district court held, and all of us agree, that the present charter controversy does warrant arbitration, a sufficient reason is provided for retaining the seizure in force.
 
 
 23
 Indeed, even if the test for utilizing 8 were the more severe one which my brothers suggest, this claim would pass it. No one denies that if the Ministry had libeled Greenwich for the cargo damage, Greenwich could have brought Fidelity into the case and had the benefit of 8, even though Greenwich would not be entitled to a judgment against Fidelity unless the Ministry prevailed. This would be true even if the Ministry had also sued Fidelity for cargo damage. That, by withholding the freight, the Ministry put the burden on Greenwich to initiate a suit which would inevitably include the issue of cargo damage, should not deprive Greenwich of the right to bring a simultaneous suit for indemnity that it would otherwise have had. The controversy was anything but 'speculative and hypothetical.' Not merely had the Ministry given notice of a claim against Greenwich, but Greenwich was already out of pocket for some $93,000 of freight not paid by the Ministry because of the alleged cargo damage, for which Greenwich would surely have to sue Fidelity if the Ministry prevailed; indeed, the decision on Greenwich's claim for the freight would almost necessarily settle the liability for the entire cargo damage. Moran Towing & Transp. Co. v. United States, 56 F.Supp. 104 (S.D.N.Y.1944), is very much in point to the effect that the admiralty will not deprive a party of a remedy because of a technical claim of prematurity. Furthermore the standard read into 8 by the majority may well be met by considering the circumstances as warranting declaratory relief under Admiralty Rule 59. There is no need for a libel seeking arbitration to make express mention of this since, on the majority's view, the test is whether relief could be given in a traditional admiralty proceeding. No Admiralty Rule excludes seizure in a case where jurisdiction is so founded, although in determining the amount of a bond under Rule 12, the court would naturally consider what damages might ultimately be added at the foot of the decree. All this has now been given point by the arbitral award; it is small comfort for appellant to be told it can now seize the Alexandra if Fidelity should be so kind as to make her available.
 
 
 24
 I would reverse the dismissal of Greenwich's libel.
 
 
 
 [1]
 The dissent seems to be interpreting the words of Section 8, 'If the basis of jurisdiction be a cause of action otherwise justiciable in admiralty,' to mean nothing more in effect than 'when there would be jurisdiction in admiralty of the subject matter apart from the arbitration clause.' However, the language of Section 8 cannot be ignored, especially since the drafters revealed a familiarity with the 'subject matter jurisdiction' phraseology. Compare Section 4, 'any United States district court which * * * would have jurisdiction * * * in admiralty of the subject matter of a suit arising out of the controversy between the parties' and the obviously more restricted language of Section 8, 'If the basis of jurisdiction be a cause of action otherwise justiciable in admiralty * * *.' Moreover, the dissent does not explain why, for example, the drafters did not provide for the right to seizure in Section 4 cases, nor why the drafters would ever condition the right to seizure on the mere allegation of 'the kind of claim that the district court would have had power to entertain,' which presumably could be satisfied in every case where the arbitral clause was a part of a maritime contract and the controversy involves some aspect of that contract
 Unfortunately the legislative history does not resolve this difference in our interpretation of Section 8. See Hearing before the Senate Committee on the Judiciary, on S. 4214, January 31, 1923, 67th Cong., 4th Sess.; Joint Hearings before the Subcommittees of the Committees on the Judiciary of the Senate and House of Representatives on S. 1005 and H.R. 646, January 9, 1924, 68th Cong., 1st Sess.; Senate Report No. 536, 68th Cong., 1st Sess., May 14, 1924, to accompany S. 1005; House Report No. 96, 68th Cong., 1st Sess., January 24, 1924, to accompany H.R. 646; 66 Congressional Record, pt. 3, pp. 3003-04, 68th Cong., 2d Sess., February 4, 1925. Attention focused primarily on what was then thought the heart of the legislative reform, Section 2, which validated arbitration agreements, making them irrevocable and enforceable. At most, passing reference to what is now Section 8 was made, to the effect that it 'protects libels and seizures of vessels in admiralty proceedings,' Hearing before the Senate Committee on the Judiciary on S. 4214, supra, p. 2, and Joint Hearing before the Subcommittees of the Committee on the Judiciary on S. 1005 and H.R. 646, supra.