**RUBY–COLLINS, INC.,**
Plaintiff-Appellee,

v.

**CITY OF HUNTSVILLE, ALABAMA,**
Defendant-Appellant.

No. 83–7430.

United States Court of Appeals,
Eleventh Circuit.

Dec. 10, 1984.

Howell R. Riggs, Paul J. Walstad, Huntsville, Ala., George C. Baldwin, Vienna, Va., Cantey Cooper, Huntsville, Ala., for defendant-appellant.

Gary C. Huckaby, Huntsville, Ala., David Flint, Atlanta, Ga., for plaintiff-appellee.

Before RONEY and VANCE, Circuit Judges, and SIMPSON, Senior Circuit Judge.

SIMPSON, Senior Circuit Judge:

The City of Huntsville, Alabama, and Ruby Collins, Inc., a Kentucky corporation, entered into a written contract for the construction of a sewer pipeline. During the course of construction, Ruby-Collins encountered unanticipated groundwater in a section of the jobsite which it claims could not have been discovered in the pre-bid site inspection specified in the contract. The contractor submitted a claim for an equitable adjustment of the contract price to the supervising engineer in which it requested over nine hundred and fifty thousand dollars to cover time, labor, materials and equipment necessary to dewater the site and complete construction. The engineer took no action. However, the City directly responded and refused any adjustment. When the City refused a subsequent request to arbitrate the dispute, the contractor invoked the diversity jurisdiction of the district court and filed an action to compel arbitration under the United States Arbitration Act, 9 U.S.C. §§ 1–14. The City's pleadings admitted execution of the written contract but asserted that the Act was inapplicable because the contract did not involve interstate commerce and contained no enforceable agreement to arbitrate claims for equitable adjustment. After holding an evidentiary hearing at which the contractor proved the interstate nexus required by § 2 of the Act, 9 U.S.C. § 2, the court found an enforceable agreement in § 50–01 of the contract and ordered the city to honor it. The City now appeals alleging that the district court erred in failing to hold a "summary trial", in ignoring Alabama law which declares contracts divesting courts of jurisdiction over disputes arising in the future *void ab initio* and in misinterpreting § 50–01 as an enforceable agreement to arbitrate a claim for equitable adjustment.

Though the City concedes the execution of the written contract and the authenticity and admissibility of the contract copies submitted to the court, it nevertheless argues that it has been denied a statutory right to a "summary trial" concerning "the making of the agreement for arbitration," which is purportedly guaranteed by 9 U.S.C. § 4. The argument is frivolous. Appellant has raised only one issue which even arguably addresses "the making of the arbitration agreement." The city contends that the parties could have formed no enforceable agreement to arbitrate a future dispute because all such agreements are *void ab initio* under Alabama law. Though the appellant has correctly stated the position of the Alabama courts up to and including the date of oral argument before this court, the question raises no issue of fact, to be determined at trial. Moreover, the legal premise upon which it is based is no longer recognized as valid in the state courts of Alabama. Intervening

state authority recognizes that the United States Arbitration Act creates a federal right to enter into enforceable agreements to arbitrate future disputes which may not be limited by state law. *Ex Parte Alabama Oxygen Co.*, 452 So.2d 860, 861 (Ala. 1984). At oral argument before this court, the City conceded that the contractor had proven that the construction contract involved interstate commerce and that the act would therefore apply to any arbitration agreement contained within that contract. Consequently, we find no error in failing to hold a "summary trial" (a term neither employed by the statute nor defined by the City) or in failing to apply state law limitations on the formation and interpretation of arbitration agreements to a contract which falls under the Act.

The construction of the pertinent contract clauses is more problematic due to the complex nature of a public works contract which consists of a hodge-podge of government forms. The possible remedies available to the parties appear in § 50–01 of the general conditions and supplemental general conditions 3 [1] and 7 [2] which supercede any conflicting general provisions by the authority of supplemental general condition 1(a). [3]

■ The City argues that no section of the contract can be construed as an en-

forceable arbitration agreement because supplemental condition 7 states that the parties *may* agree to arbitrate disputes arising out of the contract and that any construction of the contractual language of other paragraphs as an enforceable agreement would fail to give effect to this language. We disagree. The district court's opinion does no violence to rules of contract construction in recognizing that the parties to the instant contract may recognize the value and validity of arbitration agreements in one section of the contract and actually form such an agreement in another.

■ The City next raises an alternative equitable argument that inasmuch as the language of § 50–01 does not grant the power to enter judgment on an arbitration award, no order specifically enforcing the agreement can be entered because a court may not require the parties to perform a useless act. Though § 9 of the Arbitration Act, 9 U.S.C. § 9, does authorize a court to enter judgment on an arbitrator's award if the parties so provide in their agreement, nothing in the language of the Act, which grants the district court the power to compel arbitration and enforce awards in independent sections, implies that Congress intended to limit the court's authority to enforce an agreement to those cases in which

1. Differing Site Conditions:

(a) The Contractor shall promptly, and before such conditions are disturbed, notify the Owner in writing of:

(1) subsurface or latent physical conditions at the site differing materially from those indicated in this contract.

(2) unknown physical conditions at the site, of an unusual nature, differing materially from those ordinarily encountered and generally recognized as inhering in work of the character provided for this contract. The Owner shall promptly investigate the conditions, and if he finds that such conditions do materially so differ and cause an increase or decrease in the Contractor's cost of, or the time required for, performance of any part of the work under this contract whether or not changed as a result of such conditions, an equitable adjustment shall be made and the contract modified in writing accordingly.

(b) No claim of the Contractor under this clause shall be allowed unless the Contractor

has given the notice required in (a) above, provided, however, the time prescribed therefor may be extended by the Owner.

(c) No claim by the Contractor for an equitable adjustment hereunder shall be allowed if asserted after final payment under this contract.

2. 7. Remedies. Except as may be otherwise provided in this contract, all claims, counterclaims, disputes and other matters in question between the Owner and the Contractor arising out of or relating to this agreement or the breach thereof will be decided by arbitration if the parties hereto mutually agree, or in a court of competent jurisdiction within the State in which the Owner is located.

3. 1. General (a) The Owner and the Contractor agree that the following supplemental general provisions shall apply to the work to be performed under this contract and that such provisions shall supersede any conflicting provisions of this contract.

it has the power to ·enforce the award. Nor do we have confidence in the City's interpretation of § 50–01 as failing to grant the district·court the power to affirm the award or in its characterization of arbitration as "useless" in the absence of such authority. The Supreme Court has construed an arbitration agreement which provided that the arbitrator's decision was "final and binding" as authorizing entry of judgment. *Marine Transit Corp. v. Dreyfus*, 284 U.S. 263, 276, 52 S.Ct. 166, 169, 76 L.Ed. 282 (1932). The language of § 50–01, though somewhat loosely drafted, implies that the results of arbitration would be final. Moreover, the City's argument ignores the fact that a state or federal court which lacks the statutory or contractual authority to enter judgment enforcing an arbitration award may still hear and adjudicate an action based upon a party's failure to honor the award itself. *A.J. Curtis Co. v. D.W. Falls, Inc.*, 305 F.2d 811 (3d Cir.1962); *McCullough v. Clinch-Mitchell Const. Co.*, 71 F.2d 17, 22 (8th Cir.) *cert. denied* 293 U.S. 582, 55 S.Ct. 96, 79 L.Ed. 678 (1934). Further, the evidence gathering and fact finding functions of arbitration are useful *per se* and assist in resolving disputes through encouraging settlement or fixing the parties' positions in succeeding arbitration or litigation. Cf. *Dallas Typographical Union No. 173 v. A.H. Belo Co.*, 372 F.2d 577, 583 (5th Cir. 1967) (arbitrator may draw freely on principles akin to stare decisis, res judicata and collateral estoppel in related cases); *see also, Maidman v. O'Brien*, 473 F.Supp. 25, 29 (S.D.N.Y.1979) (collateral estoppel applied to suit following arbitration); *Hotel, Motel, Restaurant and Hirise Employees and Bartenders' Union, Local 355 v. Fontainebleau Hotel Corp.*, 423 F.Supp. 83, 85 (S.D.Fla.1976).

■ Next, appellant asks us to hold that the scope of any arbitration agreement found in § 50–01 is so limited by its own terms and the superceding language of Special Condition 3 which grants the City final authority whether to grant an adjustment of the contract price due to varying· site conditions, as to preclude its application to the instant dispute. We do not agree. Though Special Condition 3 imposes certain conditions upon the contractor's pursuit of a claim for adjustment of the contract price, it also provides that an equitable adjustment "shall be made" if the Owner (the city) finds a material variance between the site conditions and the contract specifications. Special Condition 3 fails, however, to specify or limit the remedies available in the event that the owner violates his contractual obligation to adjust the contract price. Special Condition 7, "Remedies" specifically provides that the parties may arbitrate claims "unless the contract otherwise provides." Because Special Condition 3 contains no express limitation on arbitration, we conclude that an arbitration agreement appearing elsewhere in the contract may be applied to a dispute arising out of the City's failure to grant an equitable adjustment without running afoul of Special Conditions 3 or 7.

■ Finally we are faced with the seminal question in this case. Can § 50–01, recited below, be construed as an arbitration agreement which would cover the instant dispute? In answering this question we are bound by the special rule of contract construction which is applied in all cases brought under the Arbitration Act: arbitration clauses are to be generously construed and all doubts are to be resolved in favor of arbitration. *Seaboard Coast Line Ry. v. Trailer Train Co.*, 690 F.2d 1343 (11th Cir.1982). Though the language of § 50–01, recited below,[4] is hardly the

---

**4.** *50–01 Observation of the Work*

The terms, "observation of the work", "inspection of construction", "supervision of construction" mean a periodic observation of materials and completed work to observe their general compliance with Plans, Specifications and design and planning concepts and does not include responsibility for the superintendence of construction processes, site conditions, operation, equipment personnel, or the maintenance of a safe place to work, or any safety in, on or about the site of the work.

The Engineer shall decide questions which may arise as to the quality and acceptability

language of choice for an arbitration agreement covering the instant dispute, we are unable to find error in the district court's construction of the contract. The Engineer is charged with a duty to decide questions which may arise as to "the quality and acceptability of the work performed, the rate of the progress of the work, interpretation of the Drawings and Specifications and all questions as to the acceptable fulfillment of the Agreement on the part of the Contractor," and the contract finally provides "All claims of the Owner or the Contractor shall be presented to the Engineer for his decisions which shall be final except in cases where time and/or financial considerations are involved, and such cases shall be subject to arbitration if not solved by mutual agreement between the Owner and the Contractor." A determination whether the work site materially differs from the contract specifications necessarily involves some of those factors which are committed to the Engineer's judgment (e.g. interpretation of drawings and specifications). Obviously, financial considerations are the heart of the instant contractor's claim. Though we entertain some doubt whether the agreement was intended to cover the instant claim, we must enforce federal policy and come down in favor of arbitration. *Id.*

The judgment of the district court is AFFIRMED.

of materials and/or equipment furnished, the quality and acceptability of work performed, the rate of progress of the work, interpretations of the Drawings and Specifications, and all questions as to the acceptable fulfillment of the Agreement on the part of the Contractor. The Contractor shall abide by these decisions. The duties and responsibility of the Engineer as set forth herein shall not be extended (sic) except through written consent of the Engineer and the Owner.

All materials and each part or detail of the work shall be subject at all times to observation by the Engineer and the Owner, and the Contractor shall be held strictly to the intent of the Contract Documents in regard to quality of materials, equipment and workmanship, and also in regard to the diligent execution of the Contract Observations may be made at the site or at the source of material supply, whether mill, plant or shop. The Engineer shall be allowed access to all parts of the work and shall be furnished with such information and assistance by the Contractor as is required to make his observations and construction review.

The Engineer's decision as to the acceptability or adequacy of the work shall be final and binding upon the Contractor. The Contractor agrees to abide by the Engineer's decision relative to the performance of the work.

All claims of the Owner or the Contractor shall be presented to the Engineer for his decisions, which shall be final except in cases where time and/or financial considerations are involved and such cases shall be subject to arbitration if not solved by mutual agreement between the Owner and the Contractor.