Rick MYERS, individually and on behalf of the class of similarly situated persons; Tadeusz Nogacki, individually and on behalf of the class of similarly situated persons; Bronislaw Kuchczynski, individually and on behalf of the class of similarly situated persons, Plaintiffs–Appellants,

Resource Group International, a Washington Corporation; American Seafoods Company, Claimants–Appellees,

v.

AMERICAN TRIUMPH F/V, (ex Acona), on 646737, her engines, boilers, equipment, appurtenances, nets, gear, etc., Defendant–Appellee.

No. 00–35157.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 10, 2001

Filed Aug. 13, 2001

Steve W. Berman, Hagens Berman LLP, Seattle, Washington, for the plaintiffs-appellants.

Jay H. Zulauf, J. David Stahl, Christopher S. McNulty, Mundt MacGregor LLP, Seattle, Washington, for the claimants-appellees.

Before: ALARCON, FERNANDEZ, and TASHIMA, Circuit Judges.

FERNANDEZ, Circuit Judge:

Rick L. Myers, Tadeusz Nogacki, and Bronislaw Kuchczynski (collectively Myers) brought this in rem class action in admiralty against the fishing vessel F/V American Triumph (the Vessel), and asserted various causes of action allegedly arising out of the Vessel's taking of ferae nature fish pursuant to a Certificate of Documentation and Fishery Endorsement (Certificate) issued by the United States Coast Guard. Resource Group International, Inc. and American Seafoods Company, the owner and charterer of the Vessel respectively, filed claims, and in response to their motion to determine probable cause and dismiss, the district court ultimately dismissed the action.[1] Myers appealed, and we affirm.

## BACKGROUND

The Coast Guard issued the Certificate on April 4, 1986, and the Vessel proceeded to take fish during the ensuing years. The Certificate was issued pursuant to 46 U.S.C. §§ 12101–12122, which provides for registration of a vessel's nationality and sets out its qualification to engage in a specified trade. Certificates can be issued with one or more trade endorsements. See 46 C.F.R. § 67.15. The fishery endorsement that was given to the Vessel entitled it "to employment in the fisheries ... [and] to land its catch, wherever caught, in the United States." 46 C.F.R. § 67.21. The Vessel proceeded to fish, and allegedly took fish worth as much as $150,000,000 during the relevant period.

Over ten years after the Certificate was issued, the Coast Guard received information which suggested that the Certificate should not have been issued in the first place. Therefore, on September 3, 1998, the Coast Guard issued a notice that it intended to invalidate the Certificate. The problem was that a vessel that is to be used in the United States fisheries not only must be built in the United States, but also, if rebuilt, must be rebuilt in the United States. See 46 U.S.C. § 12108(a)(3). However, a savings provision declared that some vessels rebuilt in foreign shipyards could qualify for a certificate. See Commercial Fishing Industry Vessel Anti–Reflagging Act of 1987, Pub.L. No. 100–239, § 4, 101 Stat. 1778, 1779–80 (1988), as amended by Pub.L. No. 101–225, § 310, 103 Stat.1908, 1926 (1989) (provisions at 46 U.S.C. § 12108 notes).

---

1. Hereafter, for convenience we will refer to the Vessel as the party opposing the in rem proceeding.

But to comply with that exception, the Vessel had to have been under a contract of purchase for use in the United States fisheries before July 28, 1987. *See* 46 C.F.R. § 67.45. The Coast Guard opined that despite the fact that it had been told that there was a qualifying contract to purchase, the contract had initially been oral, and a written memorialization of that contract "was likely produced after July 28, 1987," although it bore an earlier date. The Coast Guard noted that it did not accept oral contracts or written memorializations of them produced after July 28, 1987; hence, its notice of intent to cancel the Certificate.

Before matters could proceed further, however, Congress enacted the American Fisheries Act, in which, among other things, it exempted the Vessel from the condition that formed the basis of the Coast Guard's notice. *See* Pub.L. No. 105–277, § 208(e), 112 Stat. 2681, 2681–625 (1998) (provisions at 16 U.S.C. § 1851 notes). That brought the Coast Guard proceedings against the Certificate to an end, and on November 3, 1998, it grudgingly rescinded its notice. Needless to say, the Vessel, therefore, continued to hold the Certificate and could continue to take fish.

Myers was not satisfied with that result. Thus, he commenced this admiralty action against the Vessel for conversion of the ferae nature fish that the Vessel had captured from 1989 through 1998. Myers thought the fish should have belonged to him and the other members of the class. He also asserted intentional and negligent interference with business opportunity, misrepresentation, and unjust enrichment on the same basis. At his behest, the Vessel was arrested, but it was released at an ensuing probable cause hearing, the action was ultimately dismissed, and Myers appealed.

## STANDARD OF REVIEW

■ Whether a party's claims give rise to a maritime lien so that the party can pursue an action in rem against a vessel is a question of law which we review de novo. *Melwire Trading Co. Inc., v. M/V Cape Antibes,* 811 F.2d 1271, 1273 (9th Cir. 1987).

## DISCUSSION

While Myers and the Vessel have joined issue on many questions, we have determined that one alone is dispositive, and, therefore, we do not address any others.

■ When all is said and done, the fact remains that throughout the period in question, and even to this day, the Vessel held a Certificate issued by the Coast Guard. Certainly nothing, including the Coast Guard's preliminary determination and issuance of its notice, changed that. And it cannot be gainsaid that the Certificate was "conclusive evidence of qualification to be employed in [the fishing] trade." *See* 46 U.S.C. § 12104(2). Nothing could be plainer than that. There is hardly a stronger piece of legal language available to a lawmaker, for, as the Fifth Circuit has said, "[i]n its customary legal usage, 'conclusive evidence' means '[t]hat which is incontrovertible, either because the law does not permit it to be contradicted, or because it is so strong and convincing as to overbear all proof to the contrary....'" *Kirby Corp. v. Pena,* 109 F.3d 258, 263 (5th Cir.1997) (citation omitted); *see also* Black's Law Dictionary 577 (7th ed.1999). Faced with that clarity, we must apply the usual rules of construction. As we have said:

> "Canons of statutory construction dictate that if the language of a statute is clear, we look no further than that language in determining the statute's meaning." ... Of course, we do not

limit ourselves to the apparent plain meaning of a statute, if doing so leads to "absurd or impracticable consequences." *Or. Natural Res. Council, Inc. v. Kantor,* 99 F.3d 334, 339 (9th Cir.1996) (citations and some internal quotation marks omitted); *see also Foxgord v. Hischemoeller,* 820 F.2d 1030, 1034 (9th Cir.1987).

There is nothing absurd about a straightforward reading of the statute. Congress has precluded endless complaints and proceedings about a vessel's right to take fish once a certificate has issued. Obviously, the alleged grounds of complaint could be as multitudinous as the minds of inventive people could make them. But Congress foreclosed all of that; if a complaint was to be made or an impediment thrown up, it had to come before a certificate issued. This case is a perfect confirmation of Congress's prescience. More than ten years after the Vessel obtained the Certificate, Myers seeks to have it disgorge everything it earned from its catch, at least up to 1998, and that to the tune of $150,000,000. Congress has decreed that cannot be.

█ It will not do for Myers to aver that he is not attacking the Certificate at all. Quite plainly, he is making a veiled attack upon it. The fish were ferae nature and, thus, were simply not owned by him when they were taken by the Vessel. Indeed, they were, if anything, under the legal control of the United States. Either the Certificate was incontestably valid and the Vessel had the permission of the United States to take those fish, or it was not valid and the Vessel should have stayed home. We know that it was the former. Myers's arguments to the contrary are an interesting scholastic exercise, but amount to little more than a losing logomachy. To put it bluntly, when a vessel has a certificate that authorizes it to take fish, no private action is available to attack its taking of fish pursuant to that certificate. A contrary rule would permit a party to controvert the incontrovertible.

That is not to say that the Coast Guard itself cannot seek to invalidate improperly issued certificates, and at least preclude their future use. *Cf. Lauritzen v. Larsen,* 345 U.S. 571, 584, 73 S.Ct. 921, 929, 97 L.Ed. 1254 (1953) (stating that the question of the "regularity and validity" of a registration is in the hands of the issuing state). Of course, in this instance the possibility of that kind of deprivation ended when Congress passed the American Fisheries Act.[2] At any rate, none of that can offer solace to Myers or help his position.

## CONCLUSION

Once the Coast Guard gave notice that it might cancel the Vessel's Certificate, Myers saw an opportunity to capture the Vessel's income from the past years. He cannot succeed because the Vessel had an incontrovertible right to take fish during the years in question.

AFFIRMED.

---

**2.** Section 208(e), 83 Stat. at 2681–625. Incidentally, nothing in that Act suggests that the Certificate was anything but incontrovertible before the Act was passed. It merely assured that the Certificate would remain so in the future.