

Villanova University School of Law

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-27-2009

# Petroleos Mexicanos v. MT King A

Precedential or Non-Precedential: Precedential

Docket No. 07-3402

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Petroleos Mexicanos v. MT King A" (2009). *2009 Decisions.* Paper 1952.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1952

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-3402
_____

PETROLEOS MEXICANOS REFINACION,

Appellee

v.

M/T KING A (EX-TBILISI),
her engines, boilers, etc., in rem
by KING DAVID SHIPPING CO., LTD.,

Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 02-cv-01215)

District Judge: Honorable Dennis M. Cavanaugh
_____

Argued September 11, 2008
_____

Before: SLOVITER, FUENTES and ALDISERT, <u>Circuit</u>
<u>Judges</u>
(Filed: January 27, 2009)

Jeremy J.O. Harwood (Argued)
Blank Rome LLP
405 Lexington Avenue
New York, New York 10174

   Counsel for Appellant

Michael Cohen (Argued)
Terry L. Stoltz
Kevin J.B. O'Malley
Nicoletti Hornig & Sweeney
Wall Street Plaza
88 Pine Street, 7th Floor
New York, New York 10005

Andrew J. Goldstein
Goldstein Isaacson, PC
100 Morris Avenue, 3rd Floor
Springfield, New Jersey 07081

   Counsel for Appellee

---

OPINION OF THE COURT

---

ALDISERT, Circuit Judge.

In this admiralty case, the owner of a seagoing vessel appeals on behalf of its vessel in rem from a judgment of the United States District Court for the District of New Jersey denying its Supplemental Rule E(4)(f) application to vacate a warrant of arrest for the vessel, to cancel and discharge substitute security and to dismiss a complaint brought by a charterer of the vessel in a claim for cargo damages.[1] Although other issues are presented, we must first decide whether the one-year time-for-suit provision for cargo damage claims provided for in the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 30701,[2] extinguished the maritime lien on the vessel. We decide that the running of the COGSA statute of limitations did extinguish the maritime lien on the vessel and that the District Court therefore lacked admiralty in rem jurisdiction to issue the

---

[1] Because this is an in rem action, the vessel itself is the defendant with owner King David Shipping Co. merely acting on its behalf. See Salazar v. Atlantic Sun, 881 F.2d 73, 76 (3d Cir. 1989). For simplicity's sake, we will dispense with the linguistic formality in the opinion and refer simply to King David's actions, arguments, etc., while recognizing that it appears only on behalf of its vessel.

[2] Previously, COGSA appeared at 46 U.S.C. § 1303, et seq. The Act is still in force but was not recodified. Currently, COGSA appears in a note to 46 U.S.C. § 30701.

warrant of arrest for the vessel. We therefore reverse the judgment of the District Court denying the motion to vacate the warrant of arrest and other requested relief.[3]

I.

On November 19, 1992, Petroleos Mexicanos Refinacion ("Pemex") chartered a ship, the M/T TBILISI (now renamed M/T KING A), from Tbilisi Shipping Co., Ltd., pursuant to a contractual charter agreement. The vessel was to carry diesel oil and unleaded gasoline to several Mexican ports. During the discharge of the cargo at Guaymas, Mexico, it was discovered

---

[3] The District Court had admiralty jurisdiction under 28 U.S.C. § 1333. Whether a valid maritime lien existed, giving rise to the District Court's subject matter jurisdiction, is an issue on appeal. This Court has jurisdiction pursuant to 28 U.S.C. § 1291. This Court exercises plenary review over the District Court's determination that Petroleos Mexicanos Refinacion's complaint seeking a warrant of arrest was not barred by COGSA's one-year limitation period. See Syed v. Hercules Inc., 214 F.3d 155, 159 n.2 (3d Cir. 2000) ("We exercise plenary review over the District Court's choice of the applicable statute of limitations."). Furthermore, this Court exercises plenary review over the District Court's determination that a maritime lien giving rise to in rem jurisdiction existed. See, e.g., Myers v. Am. Triumph F/V, 260 F.3d 1067, 1069 (9th Cir. 2001).

4

that the two cargoes had been cross-contaminated during their voyage on the M/T TBILISI. Tbilisi Shipping did not dispute its liability for the contamination. Pemex salvaged the contaminated cargoes, incurring a disputed amount of salvage costs and losses. Pemex withheld $530,320 of charter hire as security for its anticipated claim for damages.

In April 1993, Tbilisi Shipping demanded arbitration to recover the withheld hire. On May 18, 1993, Tbilisi Shipping's protection and indemnity ("P & I") club, Steamship Mutual Underwriting Association (Bermuda), Ltd. ("Steamship Mutual"), issued a Letter of Undertaking ("First LOU") to secure a possible arbitration award in Pemex's favor up to $530,320, inclusive of costs and attorneys' fees, plus interest up to $94,000. In return for the issuance of the First LOU, Pemex agreed to pay the withheld hire and to refrain from arresting the vessel, except to the extent that Pemex's claim exceeded the amount secured by the First LOU. The First LOU also stated that "[t]his letter is provided entirely without prejudice to any rights or defenses which the said M/V TBILISI and/or Tbilisi may have under applicable law." App. JA-111. As we will develop, it is this reservation-of-rights clause that triggers operation of the one-year statute of limitations that prevents the issuance of the warrant of arrest. See infra Part V.

In 1995, prior to Pemex presenting a claim to the arbitration panel, Tbilisi Shipping made an application to the arbitration panel for dismissal of Pemex's claim. Tbilisi

5

Shipping contended that Pemex's claim was barred by the one-year statute of limitations for cargo damage claims provided for in COGSA. The arbitration panel found that Pemex's claim was not barred by the statue of limitations, but the arbitrators instructed Pemex to submit any claim it had against Tbilisi Shipping expeditiously. Pemex submitted a Statement of Claim on January 15, 1996. The claim was solely against Tbilisi Shipping, in personam.

Sometime during the arbitration, Pemex discovered that Tbilisi Shipping had sold the M/T TBILISI to King David Shipping Co. ("King David") and that the vessel had been renamed M/T KING A. In early 2002, Pemex discovered that the M/T KING A was scheduled to call at a terminal in New Jersey. In March 2002, Pemex filed its complaint in the District Court for the District of New Jersey naming the M/T KING A as an in rem defendant and the District Court issued the warrant of arrest for the vessel. King David was advised of the issuance of the warrant of arrest and was given the opportunity to avoid the arrest by posting additional security. Accordingly, King David's P&I Club, also Steamship Mutual, issued another LOU ("Second LOU") in the amount of $707,819.60, plus interest, costs and attorneys' fees.

On September 10, 2002, King David submitted an application in the District Court to vacate the warrant of arrest

pursuant to Supplemental Rule E(4)(f).[4] Through the application, King David also sought to cancel and discharge the Second LOU and any bond demanded thereon and dismiss Pemex's complaint. The District Court determined that a valid maritime lien on the vessel existed, and that the warrant of arrest was properly issued. The District Court also determined that the complaint was not barred by the statute of limitations, and therefore the complaint need not be dismissed. On April 15, 2003, the District Court denied the application to vacate the warrant.

King David appealed the District Court's denial of its application to this Court. See Petroleos Mexicanos Refinacion v. M/T KING A (Ex-TBILISI), 377 F.3d 329 (3d Cir. 2004). This Court dismissed the action for lack of appellate jurisdiction as no final order from the District Court had been issued.

On August 9, 2006, a final arbitration award was issued

---

[4] Supplemental Rule E(4)(f) provides:

Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules.
Supplemental Rule E(4)(f), Supplemental Rules for Admiralty or Maritime Claims.

against Tbilisi Shipping and in favor of Pemex in the amount of $950,413.18. Part of the award was satisfied by the First LOU. On July 26, 2007, Pemex and King David consented to entry of a final judgment in the District Court in the amount of $395,265.04, which represented the unpaid balance of the arbitration award. From this final judgment, King David appeals the merits of the District Court's 2003 denial of its application to vacate the warrant of arrest.[5]

## II.

A maritime lien and a proceeding <u>in rem</u> are correlative; "where one exists, the other can be taken, and not otherwise." <u>The Rock Island Bridge</u>, 73 U.S. 213, 215 (1867). Accordingly, any action <u>in rem</u> pursuant to Supplemental Rule C to enforce a maritime lien on a vessel must be premised on the existence of a valid maritime lien at the time that the action was filed. <u>See</u> <u>Belcher Co. of Ala. v. M/V Maratha Mariner</u>, 724 F.2d 1161, 1163 (5th Cir. 1984) ("a maritime lien on the vessel is a prerequisite to an action <u>in rem</u>"); <u>Amstar Corp. v. S/S Alexandros T.</u>, 664 F.2d 904, 908 (4th Cir. 1981) ("[a] maritime lien is an essential predicate for the arrest of a vessel in a private in rem action"); <u>Rainbow Line, Inc. v. M/V Tequila</u>, 480 F.2d

---

[5] In many instances in this opinion, we use the short expression "to vacate the warrant of arrest" to include also "to cancel and discharge substitute security and dismiss the complaint."

1024, 1028 (2d Cir. 1973) ("in rem jurisdiction in the admiralty exists only to enforce a maritime lien.") (citations omitted).

Supplemental Rule C permits an action in rem "[t]o enforce any maritime lien." Rule C(1)(a), Supplemental Rules for Admiralty or Maritime Claims. Furthermore, Supplemental Rule E requires a party seeking a warrant of arrest to file a "complaint [that] shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Id. Rule E(2)(a). "If the conditions for an in rem action appear to exist, the court must issue an order directing the clerk to issue a warrant for the arrest of the vessel or other property that is the subject of the action." Id. Rule C(3)(a)(ii)(A).

It is well settled that claims for breach of charter and cargo damage give rise to maritime liens. See Rainbow Line, 480 F.2d at 1027 ("The American law is clear that there is a maritime lien for the breach of a charter party . . . ."); RR Caribbean, Inc. v. Dredge "Jumby Bay", 147 F. Supp. 2d 378, 381 (D.V.I. 2001) (recognizing a maritime lien for breach of a partially executed charter party); Demsey & Assocs., Inc. v. S.S. Sea Star, 461 F.2d 1009, 1014 (2d Cir. 1972), abrogated on other grounds by Seguros Illimani S.A. v. M/V Popi P, 929 F.2d 89 (2d Cir. 1991) ("[e]very claim for cargo damages creates a maritime lien against the ship which may be enforced by a libel

9

in rem"). In this case, the breach of the charter agreement through the contamination of the diesel oil and unleaded gasoline gave rise to a maritime lien. Pemex's verified complaint filed in the District Court requesting a warrant of arrest for the M/V KING A plainly asserts facts giving rise to a maritime lien. App. JA-60-65.

When a maritime lien exists, the district court has admiralty jurisdiction and it is proper for the district court to issue a warrant of arrest for the vessel pursuant to Supplemental Rule C(3)(a)(i). King David's contention that the District Court improperly issued the warrant of arrest is based primarily on its statute of limitations defense. King David argues that the expiration of the COGSA limitation period extinguished any lien that Pemex had on the vessel. Because no lien on the vessel existed when Pemex filed its complaint, King David argues, the District Court lacked the admiralty jurisdiction to issue the warrant of arrest.

It is undisputed that COGSA was incorporated into the parties' charter agreement and that the one-year statute of limitations applies. The following portions of COGSA assist us in the analysis of this case:

**Sec. 1. Definitions**

**(a)** The term 'carrier' includes the owner or the charterer who enters into a contract of carriage with a shipper.

10

**Sec. 3. Responsibilities and liabilities of carrier and ship**
**(2) Cargo**
The carrier shall properly and carefully load, handle, stow, carry, keep, care for, and discharge the goods carried.

**(6) [L]imitation of actions**
In any event the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered.

Carriage of Goods by Sea Act §§ 1, 3, Historical and Statutory Notes to 46 U.S.C. § 30701.

The COGSA statute of limitations "is one which extinguishes the cause of action itself, and not merely the remedy." M.V.M., Inc. v. St. Paul Fire & Marine Ins. Co., 156 F. Supp. 879, 883 (S.D.N.Y. 1957), rev'd on other grounds sub nom, St. Paul Fire & Marine Ins. Co v. U.S. Lines Co., 258 F.2d 374 (2d Cir. 1958); Am. Hoesch, Inc. v. S.S. AUBADE, 316 F. Supp. 1193, 1194 (D.S.C. 1970) (recognizing that COGSA's time-for-suit provision extinguishes the cause of action and the remedy); cf. Midstate Horticultural Co. v. Penn. R.R., 320 U.S. 356, 363-364 (1943) (recognizing that the time-for-suit clause in the Interstate Commerce Act terminates a substantive claim and its corresponding remedy). Accordingly, if we determine

11

that Pemex's in rem complaint was barred by the COGSA statute of limitations, it necessarily follows that the District Court had no grounds upon which to issue a warrant of arrest. Our determination of the untimeliness of Pemex's complaint is based on the applicability of the COGSA time bar and the contractual provisions of the First LOU.

## III.

Letters of undertaking ("LOUs") are contracts between the parties identified in the letter. Perez & Compania (Cataluna), S.A. v. M/V MEXICO I, 826 F.2d 1449, 1451 (5th Cir. 1987). Generally, once a LOU is issued, the letter becomes a complete substitute for the res and the maritime lien transfers from the vessel to the LOU. Maritima Antares, S.A. v. The Vessel ESSI CAMILLA, 633 F. Supp. 694, 695 (E.D. Va. 1986) ("[A]s a substitute for the res, [it] ha[s] the effect of transferring the maritime lien from the vessel to the security fund."); see also Mackensworth v. S.S. AMERICAN MERCHANT, 28 F.3d 246, 252 (2d Cir. 1994) ("In accordance with generally accepted practice, this Letter of Undertaking became the substitute res for the value of [the] claim."). As stated in The Law of Admiralty: "With respect to a lien in suit the effect of release is to transfer the lien from the ship to the fund represented by the bond or stipulation. The lien against the ship is discharged for all purposes and the ship cannot again be libeled in rem for the same claim." Grant Gilmore & Charles L. Black, Jr., The Law of Admiralty § 9-89, at 799 (2d ed. 1975) (footnote omitted).

12

If the amount of security provided by the LOU is insufficient to satisfy a judgment, the court ordinarily may authorize the re-arrest of the vessel only if the amount of the original security was obtained through fraud or mistake. See Moore v. M/V ANGELA, 353 F.3d 376, 385-386 (5th Cir. 2003) ("While it is true that a district court may require 'further security' at any time, we interpret the phrase to mean substitute or replacement security (e.g., when a surety has become insolvent) rather than additional security, except where the vessel was released by fraud, misrepresentation, or mistake of the court." (internal citation omitted) (emphasis in original)); Industria Nacional Del Papel, CA. v. M/V ALBERT F, 730 F.2d 622, 626 (11th Cir. 1984) (holding that a mistake sufficient to justify re-arrest must be tinged with fraud or misrepresentation).

Although in this case there was no fraud or mistake, the First LOU expressly authorized Pemex to seek additional security if the amount of its claim exceeded the amount secured by the First LOU. Generally, a LOU would not contain such a provision. A standard LOU serves as a complete substitute for the res, but here the First LOU served only to secure the remittance of the withheld hire and not to prevent service of an arrest warrant on the vessel. Accordingly, the First LOU contained this unique contractual reservation of the right to later arrest the vessel. Pemex, however, failed to take such action to increase its security until nine years had passed. King David contends that Pemex had seven months from the issuance of the First LOU to calculate the amount of its claim for cargo

13

damages and to seek any additional security.[6] Had Pemex done so, King David argues, it would have undoubtedly been within the COGSA limitations period, but attempting to seek the additional security after the expiration of the limitations period renders Pemex's claim for additional security untimely.

Critical to the resolution of this action is the interaction of two contractual provisions in the First LOU: (1) language in the recital paragraph permitting later arrest of the vessel should Pemex's claim exceed the amount of the First LOU, and (2) the reservation-of-rights clause in Paragraph Six.

The recital paragraph states:

> In consideration of [Pemex] making a telegraphic remittance . . . of outstanding hire in the amount of $530,320 . . . and in consideration of Pemex refraining from arresting the M/V TBILISI and

---

[6] The cargo was contaminated in December 1992 and Pemex's mitigation efforts were complete no later than March 1993. The First LOU was issued on May 18, 1993. King David argues that if the claim arose in December 1992, Pemex would have roughly seven months from the issuance of the First LOU to file its claim for damages within the COGSA one-year statute of limitations. Even if the claim arose when mitigation efforts were complete, King David argues that Pemex did not seek to arrest the vessel until March 2002, nine years later.

14

from attaching other property of Tbilisi [Shipping], their agents and operators, for its claim for alleged damage to a cargo of diesel and magna sin gasoline shipped under the captioned charter party except to the extent the claim exceeds the amount of security provided herein, namely $530,320 . . . .

App. JA-108-109 (emphasis supplied).

Paragraph Six provides:

This letter is provided entirely without prejudice to any rights or defenses which the said M/V TBILISI and/or Tbilisi [Shipping] may have under applicable law, including but not limited to the right of arbitration and claims for interest on late paid hire, none of which is to be regarded as waived, and is provided without prejudice to the terms of the Charter.

App. JA-111-112 (emphasis supplied).

Our decision turns on whether the terms of COGSA, including its one-year statute of limitations, come within the "applicable law" referenced in Paragraph Six of the First LOU, irrespective of the seemingly unlimited right to later arrest the vessel provided for in the recital paragraph of the same document.

15

If we decide that the one-year limitations period did not bar Pemex from seeking additional security at a very late date, we must determine that the District Court's issuance of the warrant of arrest for the vessel was proper. If we decide that Pemex's efforts were barred by the one-year limitations period, however, we must reverse the District Court's judgment for lack of admiralty jurisdiction. We now turn to reasons supplied by the District Court in refusing to vacate the arrest warrant.

IV.

Even the most cursory reading of the District Court's opinion discloses that the District Court made no mention of the critical Paragraph Six of the First LOU that explicitly reserves any rights King David may "have under applicable law." Its opinion assumes that COGSA applies, but does not reconcile Paragraph Six with the recital paragraph's language permitting later arrest of the vessel. Instead, the District Court writes a modest dissertation discussing the relationship between in rem and in personam claims.

In determining that Pemex's complaint was not barred by the statute of limitations, the District Court relied on the reasoning of the United States Court of Appeals for the Second Circuit in Thyssen, Inc. v. Calypso Shipping Corp., S.A., A.M., 310 F.3d 102 (2d Cir. 2002). Although Thyssen addressed different circumstances, the District Court cited the case for its explanation of the close interrelation between in rem and in

16

personam claims in the maritime context. We do not believe that Thyssen was a proper analogy because that case addressed a situation wholly different from the one presented here.

In Thyssen, the Second Circuit addressed whether the district court erred by dismissing a plaintiff's in rem claims after a panel of London arbitrators ruled on the plaintiff's in personam claims. Specifically, the plaintiff in Thyssen contended that English law had no mechanism for granting the arbitrators jurisdiction over the in rem claims, so any ruling it made on the in personam claims had no bearing on the in rem claims. Thyssen, 310 F.3d at 106. Rejecting this argument, the Thyssen court recognized that most maritime claims give rise to both in personam and in rem claims and stated,

> Under[ 9 U.S.C.] § 8, the plaintiff may seize the ship in rem, obtain a bond, and proceed with arbitration. If the plaintiff wins but cannot recover against the owner of the vessel, it can recover against the vessel itself. The in rem claim serves as a way of making sure that a plaintiff can recover if it wins in arbitration. Any interpretation of the [Federal Arbitration Act] that allowed an in rem claim to proceed after the failure of an in personam claim would undermine the purpose of the Act with respect to maritime proceedings.

Id. at 107 (citations omitted).

17

Ultimately, relying on Thyssen, the District Court concluded,

> The in rem and in personam claims are closely intertwined. In the case at bar the Court agrees with [Pemex's] assertion that the action was timely filed as it was initiated pursuant to an ongoing arbitration and pursuant to the [First] LOU. This action is not time-barred by the statute of limitations under COGSA, 46 U.S.C. § 1303(6). An arbitration was timely commenced, and the arrest of the vessel was sought in order to protect [Pemex's] interests during that arbitration.

Petroleos Mexicanos Refinacion v. M/T King A, 2003 WL 21706137, at *5 (D.N.J. Apr. 17, 2003). The District Court's conclusion that the complaint was not timed-barred is hence rooted in two separate grounds: (1) Pemex filed its complaint pursuant to the First LOU; and (2) Pemex's complaint related back to the timely filed arbitration because Pemex's in rem claim was closely intertwined with its in personam claim. We will address each predicate of the District Court's decision, beginning with its determination that Pemex's complaint was filed "pursuant to" the First LOU.

V.

King David challenges the District Court's determination

18

that the additional security was issued "pursuant to" the First LOU. The District Court did not explain what it meant by "pursuant to" the First LOU,  namely whether the terms of COGSA, including its one-year statute of limitations, come within the "applicable law" referenced in Paragraph Six of the First LOU, irrespective of the seemingly unlimited right to later arrest the vessel provided for in the recital paragraph of the same document.

This is a unique situation. Usually, LOUs serve as a complete substitute for the <u>res</u> and therefore contain "non-waiver of rights" clauses preventing the holder of the LOU from later arresting the vessel and providing that the holder's rights shall be "precisely the same as they would have been had the vessel, in fact, been taken into custody by the United States Marshal under said in rem process, and released by the filing of claim [of owner] and release bond." <u>Cont'l Grain Co. v. Fed. Barge Lines, Inc.</u>, 268 F.2d 240, 243 n.3 (5th Cir. 1959), <u>aff'd</u>, 364 U.S. 19 (1960). Under the unique set of circumstances here, however, Pemex retained the right to later arrest the vessel should its claim exceed the amount of the First LOU. The First LOU, therefore, was only a partial substitute for the <u>res</u> and it contractually guaranteed the right to later arrest the vessel. The question before this Court is, how does this unique right to later arrest the vessel interact with the reservation-of-rights clause of Paragraph Six?

"It is axiomatic in contract law that two provisions of a

contract should be read so as not to be in conflict with each other if it is reasonably possible." <u>Keystone Fabric Laminates, Inc. v. Fed. Ins. Co.</u>, 407 F.2d 1353, 1356 (3d Cir. 1969). Pemex argues that the right to later arrest the vessel is paramount, and does not address Paragraph Six's reservation-of-rights clause. King David argues that Paragraph Six reserved all defenses of the vessel and Tbilisi Shipping, including the one-year COGSA statute of limitations. We must construe the First LOU so as to give meaning to both the recital paragraph and Paragraph Six, two reconcilable provisions. Read in conjunction with one another, they provide that Pemex retained the right to later arrest the vessel, subject to the well-known one-year COGSA statute of limitations.

## VI.

We agree totally with <u>Thyssen</u>'s characterization of <u>in rem</u> and <u>in personam</u> claims as often closely linked, but find its reasoning inapplicable in furnishing the answer to the question presented in this case. Apparently, the District Court extrapolated from <u>Thyssen</u> and reasoned that the close intertwining of the <u>in rem</u> and <u>in personam</u> claims permitted the relation back of the <u>in rem</u> action to the <u>in personam</u> arbitration, making Pemex's 2002 complaint timely. However, neither the District Court nor our own research discovered any case law to support the proposition that the mere fact of interrelation provides a basis for relation back or a tolling of the statute of limitations.

20

King David challenges the District Court's relation back reasoning, contending that the arbitration and in rem proceeding are separate actions, and we agree with its analysis. King David notes that the vessel was not a party to the timely filed arbitration. See Marine Transit Corp. v. Dreyfus, 284 U.S. 263, 275 (1932) ("[9 U.S.C. § 8] does not contemplate 'the vessel or other property,' which may be seized, as being the party to the arbitration agreement."). The arbitration was properly commenced against Tbilisi Shipping in personam and the First LOU was obtained to secure any award in favor of Pemex issued by the arbitrators against Tbilisi Shipping. As the vessel was not a party to the arbitration, King David contends, the complaint cannot relate back to the arbitration.

Although the vessel was not a party to the arbitration, this is not due to a pleading error on Pemex's part. An in rem action is cognizable only in federal court; therefore the vessel could not have been a party to the in personam arbitration. Madruga v. Superior Court, 346 U.S. 556, 560 (1954). This does not, however, preclude an aggrieved party from utilizing admiralty remedies where, as here, the parties have agreed to arbitrate any disputes. The Federal Arbitration Act ("FAA") specifically addresses this concern:

> If the basis of jurisdiction be a cause of action otherwise justiciable in admiralty, then . . . the party claiming to be aggrieved may begin his proceeding hereunder by libel and seizure of the

21

vessel or other property of the other party according to the usual course of admiralty proceedings, and the court shall then have jurisdiction to direct the parties to proceed with the arbitration and shall retain jurisdiction to enter its decree upon the award.

9 U.S.C § 8.

As the Thyssen court correctly stated, the FAA thus permits a plaintiff to seize a ship in rem, obtain a bond, and then proceed with arbitration. Thyssen, 310 F.3d at 107. "If the plaintiff wins but cannot recover against the owner of the vessel, it can recover against the vessel itself. The in rem claim serves as a way of making sure that a plaintiff can recover if it wins in arbitration." Id. (citations omitted).

Thyssen followed the approach sanctioned by the FAA and began an in rem proceeding in federal district court on a claim for cargo damages. Id. at 103. In exchange for release of the ship, Thyssen accepted an LOU from the vessel's insurer. Id. After securing in rem jurisdiction with the LOU, the suit in the district court was stayed for the action to proceed to arbitration in London pursuant to an arbitration agreement. Id. at 103-104. The London arbitrators were appointed, but the parties agreed to allow the Commercial Court in London to decide whether or not Thyssen's claims were time-barred. (English law, like COGSA, includes a one-year time bar on damaged-goods claims.) Id. at 104. That court decided that the claims were indeed time-barred

and dismissed Thyssen's claims. Id. The case then returned to the federal district court which confirmed the arbitration award and disposed of all of Thyssen's claims. Id. On appeal, Thyssen argued that as English law does not grant arbitrators in rem jurisdiction, the London arbitrators could not adjudicate its in rem claim and therefore the arbitrators' dismissal should have no bearing on its in rem claim. Id. at 106.

The Second Circuit in Thyssen rejected this argument, holding that as "[a]lmost all maritime disputes generate both an in personam and in rem claim; if plaintiffs were able to bring in rem claims in court after the failure of their in personam claims before an arbitrator, parties would have no incentive to arbitrate maritime matters." Id. The Second Circuit's ruling was thus predicated on not undermining the purpose of the FAA with respect to maritime proceedings. Id. at 107. This is the source of the "close intertwining" cited by the District Court in this case.

While seemingly related, this reasoning has no application to the case before this Court. In Thyssen, the appellant sought a second bite at the apple, attempting to proceed in rem against the vessel after its arbitration against the ship owner was dismissed. Here, Pemex prevailed in arbitration, but failed to properly secure an award with pre-arbitration seizure before the statute of limitations had run. Although the FAA clearly would have permitted Pemex to proceed in rem to seize the vessel to secure a later arbitration award, Pemex failed to fully secure its claim in rem when it accepted an LOU that

23

limited the amount of recovery to $530,320 absent further in rem proceedings. See 9 U.S.C. § 8. Had Pemex secured its claim with a standard LOU, the LOU would have served as a complete substitute for the res and its claim would have been fully secured. Had Pemex secured its claim with a later in rem proceeding pursuant to the LOU, and within the one-year COGSA statute of limitations, its claim would have been fully secured. Instead, Pemex accepted an LOU that was only a partial substitute for the res and failed to act in a timely manner.

Thyssen illustrates that maritime cases almost always involve both in rem and in personam claims and that in relation to the FAA, they are particularly closely linked, but Thyssen did not sanction relation back of these distinct, albeit related, actions.

Because we hold that a close interrelation does not provide a basis for relation back, this case is controlled by Third Circuit precedent. In Claussen v. Mene Grande Oil Co., C.A., 275 F.2d 108 (3d Cir. 1960), this Court examined whether a seaman's complaint filed in 1956 in the District of Delaware alleging injuries sustained in 1947 was time-barred even though the seaman had originally filed a timely complaint alleging the same claims in the Southern District of New York. In determining that the seaman's second complaint did not relate back to his first complaint, the Court explained, "An argument that an earlier suit filed on these claims in the Southern District of New York less than three years after the accident somehow

24

tolled the statute of limitations for the present entirely distinct action, as filed years later in the District of Delaware, is wholly without merit." Id. at 110. Similar to the seaman in Claussen, Pemex here attempts to avoid a statute of limitations by relating its in rem claim against the vessel back to an entirely distinct in personam arbitration against Tbilisi Shipping.

Here, as in Claussen, the claim has no merit. Although a standard LOU would have served as a complete substitute for the res, and thereby provided sufficient security for Pemex's eventual damage award, the First LOU was not a typical LOU. Instead, it limited recovery to $530,320 and required later in rem action to secure any additional amount Pemex may have sought. Although the First LOU provided for a possible later arrest of the vessel, that subsequent in rem proceeding is distinct from the arbitration. The facts underlying both actions are the same, but the parties are different: Pemex and the vessel in the in rem action and Pemex and Tbilisi Shipping in the arbitration.

The personification theory, while criticized by academics, remains fundamental to American admiralty practice and is the theoretical foundation of the maritime lien. Salazar v. Atlantic Sun, 881 F.2d 73, 76 (3d Cir. 1989); 1 Thomas J. Schoenbaum, Admiralty and Maritime Law § 9-1, at 515 (4th ed. 2004). Admiralty law does not contemplate the concept of relation back of in rem and in personam claims and Thyssen provides no persuasive guidance on that issue. Usually, a party will secure in rem jurisdiction over a vessel, within the limitations period,

25

before seeking arbitration, so as to secure a possible in personam award. But, as discussed, the facts before us are highly unusual. We are loathe to create an ad hoc framework to allow for such novel relation back. Accordingly, we are comfortable resting this portion of our opinion on the formalistic distinction that the ship and the shipowner are separate parties.

VII.

Furthermore, it does not appear that the doctrine of equitable tolling would be applicable in this case. "[E]quitable tolling is proper only when the 'principles of equity would make [the] rigid application [of a limitation period] unfair.'" Miller v. N.J. Dep't of Corr., 145 F.3d 616, 618 (3d Cir. 1998) (quoting Shendock v. Dir., Office of Workers' Comp. Programs, 893 F.2d 1458, 1462 (3d Cir. 1990) (en banc) (alteration in original)). Equitable tolling generally applies in three scenarios: "(1) where a defendant actively misleads a plaintiff with respect to her cause of action; (2) where the plaintiff has been prevented from asserting her claim as a result of other extraordinary circumstances; or (3) where the plaintiff asserts her claims in a timely manner but has done so in the wrong forum." Lake v. Arnold, 232 F.3d 360, 370 n.9 (3d Cir. 2000). None of these circumstances is present in this case, and neither the parties nor the District Court cited or analyzed any of the factors. Accordingly, it does not appear that equitable tolling was applicable to make Pemex's complaint timely.

26

## VIII.

In sum, Paragraph Six of the First LOU provides that "[t]his letter is provided entirely without prejudice to any rights or defense which the said M/V TIBILSI" and/or Tbilisi [Shipping] may have under applicable law." We are satisfied that COGSA qualifies as "applicable law" because it is undisputed that COGSA was incorporated into the parties' charter agreement. Reading Paragraph Six in conjunction with the arrest provision in the recital paragraph, we construe the First LOU as permitting later arrest of the vessel subject to the one-year statute of limitations. We conclude that neither the "closely intertwined" nor relation back arguments dilute the potency of our reasoning. Accordingly, as Pemex did not file its in rem complaint until some nine years had passed, we hold that the COGSA one-year statute of limitations extinguished the maritime lien on the vessel, and that the District Court therefore lacked in rem jurisdiction to issue the warrant of arrest for the vessel.

The judgment of the District Court will be reversed and the District Court is directed to vacate the warrant of arrest, to cancel and discharge substitute security and to dismiss the complaint.

FUENTES, Circuit Judge, dissenting.

I disagree with the majority for two reasons. First, Pemex's seizure of the ship was appropriate because the in rem and in personam proceedings were essentially the same claim, and the former "relates back" to the latter. Second, the seizure was justified by the specific contract provision contained within the LOU that reserved Pemex's right to seize the ship at a later date in the event the amount of its claim against Tblisi exceeded $530,320. Thus, I respectfully disagree with the majority and I would affirm the District Court's decision.

As the majority explains, under a charter agreement, the vessel Tblisi commenced a voyage on December 6, 1992, carrying a cargo of diesel oil and unleaded gasoline on behalf of Pemex. Sometime in December 1992, the oil and gasoline cross-contaminated, causing Pemex to withhold the charter fee owed to Tblisi Shipping as security for its damages.

Four months after the damage to Pemex's cargo, Tblisi demanded arbitration to claim the withheld charter fee. The arbitration began in April 1993, well within the one-year statute of

28

limitations provided in the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. app. § 1300 et seq.

Tblisi Shipping's insurer issued a Letter of Undertaking ("LOU") to Pemex on May 18, 1993. The LOU outlines that, in consideration of Pemex's payment of the withheld fee of $530,320 to Tblisi Shipping, the insurer would guarantee payment of damages up to the amount of the withheld fee. In addition, the LOU explains that Pemex would forego seizing the Tblisi, "except in the event [Pemex's] claim exceeds the amount of the security," namely $530,320.

The arbitration proceedings were unusually long, and as of March 2002, there was still no resolution. Pemex learned at that time that the vessel, now renamed the "King A," would dock at a port in New Jersey. In an effort to secure its loss, which was now clearly in excess of the $530,320 guaranteed in the LOU, Pemex sought to seize the ship. The majority now claims that the March 2002 seizure of the ship was time-barred because it did not occur within COGSA's one-year statute of limitations.

A.    Relation Back

29

Pemex claims that its seizure of the King A is not barred by COGSA's one-year statute of limitations because the seizure of a ship is an in rem proceeding that, under current admiralty principles, relates back to the filing of the arbitration proceeding. Under this doctrine, an act done at a later time is deemed by law to have occurred at an earlier time. BLACK'S LAW DICTIONARY 1314 (8th ed. 2004); see also Garvin v. City of Philadelphia, 354 F.3d 215, 220 (3d Cir. 2003) (noting that the relation back doctrine "aims to ameliorate the harsh result of the strict application of the statute of limitations"). Thus, Pemex argues that the seizure of the ship–the in rem proceeding–must be treated as though it occurred at the time that the arbitration proceeding–the in personam proceeding–was filed in April 1993.

There is no doubt that the seizure of a vessel (in rem) and an arbitration (in personam) have long been interconnected proceedings in maritime law. As Section 8 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., states

> If the basis of jurisdiction be a cause of action otherwise justiciable in admiralty, then, notwithstanding anything herein to the contrary, the party claiming to be aggrieved may begin his proceeding hereunder by libel and seizure of the

vessel or other property of the other party according to the usual course of admiralty proceedings, and the court shall then have jurisdiction to direct the parties to proceed with the arbitration and shall retain jurisdiction to enter its decree upon the award.

9 U.S.C. § 8. Several courts have stated that the purpose of this section of the FAA is to give an aggrieved party the benefit of security provided by jurisdiction in rem while preserving the right to arbitrate their dispute. See, e.g., Marine Transit Corp. v. Dreyfus, 284 U.S. 263, 275 (1932) (concluding that seizure of the vessel was the first step in enforcing arbitration, and explaining that it was not necessary for the arbitration panel to "split" the in personam claim against the corporation and the in rem claim against the vessel).

In my view, Section 8 of the FAA clearly states that the in rem and in personam claims are one proceeding, with the in rem claim serving as security for the in personam claim. The two claims arise from the same set of operative facts, and there is a clear connection between the in rem claim against the vessel and the in personam claim against the corporation.

31

When Pemex accepted the security provided by the LOU in May 1993, which guaranteed that Pemex could arrest the vessel at a later date if the claim exceeded $530,320, Pemex secured its claim as provided by Section 8 of the FAA. It is irrelevant that Tblisi initiated the arbitration rather than Pemex, as the arbitration panel noted when Tblisi first attempted to dismiss Pemex's claim as time-barred by COGSA.[7] The underlying claim was commenced within the one-year COGSA statute of limitations, and the parties similarly negotiated and executed the LOU, which provided $530,320 of security and reserved Pemex's right to later arrest the vessel, within the one-year statute of limitations.

The same reasoning regarding the closely intertwined nature of in rem and in personam claims underlies the Second Circuit's rationale in Thyssen, Inc. v. Calypso Shipping Corp., 310 F.3d 102

---

[1]As noted above, Tblisi initiated the arbitration to claim the withheld fee in April 1993. As the result of a series of delays, Pemex did not submit its itemized claim for damages until March 17, 1995. Three days later, Tblisi filed a notice with the arbitration panel arguing that Pemex failed to initiate arbitration or otherwise commence its claim for damages within COGSA's one-year statute of limitations. The arbitration panel held that Pemex rightfully asserted a claim for Tblisi's contamination of the cargo as a defense to Tblisi's claim for the charter fee.

(2d Cir. 2002). The plaintiff in Thyssen filed an in rem action in federal district court after an arbitration panel dismissed his in personam claims in a dispute over damaged cargo. The Second Circuit affirmed the District Court's decision, reasoning that Section 8 of the FAA "mak[es] clear that where there is an arbitration clause in a contract, in rem proceedings serve to provide a plaintiff with security while the in personam claim awaits arbitration." Id. at 106. The court continued that almost all maritime disputes result in both in rem and in personam claims, and to allow a plaintiff to bring an in rem claim after an in personam claim has failed would give parties no incentive to arbitrate maritime claims. Id. The court stated the proper way to handle these proceedings is for the plaintiff to seize the ship in rem, obtain a bond, and proceed with the arbitration. Id. at 107. If the plaintiff wins at arbitration, but cannot recover against the owner of the vessel, the preserved in rem claim provides security so that the plaintiff can recover against the vessel. Id.; see also Diana Compania Maritima, S. A. of Panama v. Subfreights of S. S. Admiralty Flyer, 280 F. Supp. 607, 615-16 (S.D.N.Y. 1968) (rejecting argument that an arbitration award must be limited to a judgment in personam between a vessel owner and a charterer and holding instead that an arbitration award is effective in rem against the subfreights).

Although the facts of Thyssen are somewhat distinguishable, the law is not. Had Thyssen succeeded in his

33

arbitration claim, the Second Circuit's rationale would have permitted him to pursue his claim against the vessel. Here, Pemex was a party to an arbitration commenced five months after the incident, well within the COGSA statute of limitations. It is of no import that the arbitration did not conclude until 2006. Now, Pemex is entitled to enforce the lien it has held on the vessel for over sixteen years. Therefore, I conclude that the relation back doctrine alone is sufficient to justify the seizure of the ship in 2002.

B.      Contract Law

There is a second, independent basis to permit Pemex's seizure of the ship. The LOU contained a clause which expressly and unambiguously reserved Pemex's right to arrest the vessel in the event its damages exceeded $530,320.

It is well-established in contract law that specific and exact terms are given greater weight than general language. Great Am. Ins. Co. v. Norwin Sch. Dist., 544 F.3d 229, 247 (3d Cir. 2008); see also RESTATEMENT (SECOND) OF CONTRACTS § 203(c) (1981); 5 CORBIN ON CONTRACTS § 24.23 (2007) ("[T]he more specific term should usually be held to prevail over the more general

34

term."). Here, the majority imports the COGSA statute of limitations into the LOU under the Paragraph Six "reservation of rights" clause that generically reserved "any rights or defenses" available to the vessel and its owner under "applicable law." By doing so, the majority elevates the boilerplate language of the "reservation of rights" clause over the specific language, negotiated by the parties under these special circumstances, that reserves Pemex's right to arrest the ship at a later date. Even the majority notes that this language is unusual in LOUs, calling it "[a] unique contractual reservation of right to later arrest the vessel." Maj. Op. at 13. This further supports the argument that this clause is negotiated language that should trump the boilerplate language in Paragraph Six.

Further, the majority's interpretation of the LOU renders the clause that reserves Pemex's right to arrest the vessel at a later date virtually useless, which is disfavored under general principles of contract interpretation. USX Corp. v. Liberty Mut. Ins. Co., 444 F.3d 192, 200 (3d Cir. 2006); see also RESTATEMENT (SECOND) OF CONTRACTS § 203(a) (1981) ("[A]n interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect."). According to the majority opinion, Pemex, which was already a party to an arbitration arising from the contamination incident, signed the LOU in May 1993 knowing that their right to increase security via seizure of the vessel would

35

expire in seven months. It is important to note that Tblisi Shipping, not Pemex, commenced the arbitration proceeding in April 1993 to claim the withheld fee. Pemex did not even submit its itemized damages to the arbitration panel until January 1995, although Pemex knew that its damages would exceed the $530,320 secured by the LOU when it was issued in May 1993. In my view, Pemex entered the LOU aware that its right to arrest the vessel was preserved indefinitely, given that an arbitration arising out of this incident had already been commenced. The right to arrest the ship, which related back to the date of the arbitration, rendered inapplicable COGSA's statute of limitations. Under these circumstances, it is unreasonable to import the COGSA statute of limitations into the LOU, which would have limited Pemex's right to later arrest the vessel to seven months from the date the LOU was issued.

In addition, the majority faults Pemex for not securing the full amount of the award in the LOU. The record reflects that Pemex wanted more than the $530,320 security provided in the LOU, but Tblisi Shipping refused to provide security beyond the amount of the withheld fee. (J.A. at 147.) Because Tblisi Shipping refused to provide additional security at that time, Pemex negotiated the right to seize the vessel in the future because it knew that the damages would exceed $530,320. This was the next best option available to Pemex under the circumstances.

For the foregoing reasons, I respectfully dissent.